750 P.2d 3

**STATE of Arizona,**
**Appellee/Cross–Appellant,**

v.

**Richard Wayne BRIDGEFORTH,**
**Appellant/Cross–Appellee.**

**No. CR–86–0308–PR.**

Supreme Court of Arizona,
En Banc.

Feb. 11, 1988.

Robert K. Corbin, Atty. Gen. by Eric J. Olsson, Asst. Atty. Gen., Phoenix, for appellee/cross-appellant.

Daniel F. Davis, Tucson, for appellant/cross-appellee.

HOLOHAN, Justice.

Defendant, Richard Wayne Bridgeforth, was convicted of nine counts of violating A.R.S. § 13–2310, scheme or artifice to defraud. He was sentenced to concurrent terms of 28 years' imprisonment on each count. The Court of Appeals affirmed defendant's conviction and sentences, modifying the commencement date of the sentence, *State v. Bridgeforth,* 156 Ariz. 58, 750 P.2d 1 (App.1986). We granted the defendant's petition for review to consider whether a specific intent to defraud is an element of A.R.S. § 13–2310.

### FACTS

In July, 1984, while serving a prison term at Fort Grant, Arizona, the defendant developed a plan to obtain money from prospective borrowers by advertising that the defendant, through a loan brokerage business named B & B International Finance, could, for a specific fee, arrange the placement of loans. The scheme began with an advertisement placed in a newspaper inviting prospective borrowers to contact B & B International about securing a loan. The phone number in the advertisement used to contact the business was actually the home phone number of Mary Ann Gray, a telephone operator with whom the defendant had become acquainted. The ad stated that loans from $10,000 or more could be secured through defendant's business service. The defendant was to receive a fee of $275 plus a 9% commission for arranging loans up to $30,000. If a loan was not arranged, the applicant was entitled to a refund of the service fee. The defendant

furnished a list of available lenders to Gray and instructed her to accept applicants' deposits and process their loan applications. By the end of the year, the business closed without any loans having been arranged for the applicants, and none of the refundable deposits were returned. Subsequently defendant was charged with defrauding the applicants.

At trial, the defendant testified that he never intended to defraud any of the loan applicants, stating that the business failed because his employees abandoned it. He maintained that he was forced to use customer deposits to pay the operating expenses of the business. The defendant submitted proposed jury instructions which required the state to prove that the defendant intended to defraud the applicants in his loan arrangement business. The trial court declined to give the defendant's proposed instructions and the defendant challenged that refusal in his appeal.

The Court of Appeals in affirming the defendant's convictions held that A.R.S. § 13–2310 does not require specific intent, but only knowledge. The court noted that the word "intentionally" had appeared in the predecessor statute (A.R.S. § 13–320.01) but that it was omitted from the amended present statute (A.R.S. § 13–2310). Relying on this change, the court concluded that the legislature intended to change the existing law to require only knowledge as the *mens rea* for all elements of the offense. At 59, 750 P.2d at 2. The Court of Appeals therefore found no error in the refusal of the trial court to give the defendant's requested instructions.

### INTENT

The defendant contends that despite the amendment of A.R.S. § 13–2310, intent to defraud remains an element of the statute.

The state, however, contends that by eliminating the word "intentionally" from the statute, the legislature indicated that the intent to defraud was no longer an element of the crime. The state argues that the statute requires only that the de-

fendant act "knowingly" in obtaining money from the victims.

At common law, crimes were classified as requiring either general intent or specific intent. *United States v. Bailey,* 444 U.S. 394, 403, 100 S.Ct. 624, 631, 62 L.Ed.2d 575 (1980). Numerous writers have commented on the ambiguity and confusion surrounding the use of these terms. LaFave and Scott have noted that the distinctions drawn between specific intent and general intent vary widely:

> Sometimes "general intent" is used in the same way as "criminal intent" to mean the general notion of *mens rea,* while "specific intent" is taken to mean the mental state required for a particular crime. Or, "general intent" may be used to encompass all forms of the mental state requirement, while "specific intent" is limited to the one mental state of intent. Another possibility is that "general intent" will be used to characterize an intent to do something on an undertermined occasion, and "specific intent" to denote an intent to do that thing at a particular time and place.
>
> However, *the most common usage of "specific intent" is to designate a special mental element which is required above and beyond any mental state required with respect to the actus reus of the crime.*

W. LaFave & A. Scott, *Handbook on Criminal Law* § 28, at 201–02 (1972) (emphasis added).

The confusion surrounding the common-law term "specific intent" is further evidenced by the conflicting statements by commentators on the relationship between specific intent and the other culpable mental states. Several authorities state that the common law concept of specific intent corresponds with "intent" or "purpose." *Bailey,* 444 U.S. at 405, 100 S.Ct. at 632 ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent."); MODEL PENAL CODE § 2.02 Comment at 124–25 (Tent. Draft No. 4,

1955) (same); *State v. Morse,* 127 Ariz. 25, 29–31, 617 P.2d 1141, 1145–46 (1980) (deletion of language concerning intent in statute indicates legislature intended to exclude specific intent as an element of receiving stolen property); Gerber, *Arizona's New Criminal Code: An Overview and a Critique,* 1977 ARIZ.ST.L.J. 483, 485 n. 17.

Because of the confusion that has attached to the terms specific and general intent, the drafters of the Model Penal Code and the revised Arizona Criminal Code[1] abandoned use of these terms. MODEL PENAL CODE § 2.02 Comments at 230–31, 234 (1985); *see also* ARIZONA CRIMINAL CODE COMMISSION, ARIZONA REVISED CRIMINAL CODE, at vii (1975). Arizona has instead adopted the use of the four culpable mental states of intention, knowledge, recklessness, and criminal negligence, as defined in A.R.S. § 13–105(6). *See State v. Ramos,* 133 Ariz. 4, 648 P.2d 119 (1982). The four culpable mental states are the only terms used by the Criminal Code and replace all previous mental states used in our criminal laws. *State v. Robles,* 128 Ariz. 89, 90, 623 P.2d 1245, 1246 (App.1981). A.R.S. § 13–105(6) defines the two mental states at issue as follows:

> (a) "Intentionally" or "with the intent to" means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct.
>
> (b) "Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission.

## THE STATUTE

Despite these general definitions, they are not, by themselves, dispositive of the issue because we must consider the wording of the specific statute. In *City of*

1. The revised Arizona Criminal Code became effective October 1, 1978.

*Phoenix v. Kelly,* 90 Ariz. 116, 118, 366 P.2d 470, 471 (1961), this court observed that "the statute must be construed as a whole, effect being given, if possible, to all its provisions." In so doing, "[t]his court will consider the context of the statute, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *State v. Deddens,* 112 Ariz. 425, 429, 542 P.2d 1124, 1128 (1975). The particular statute under which defendant was convicted, A.R.S. § 13–2310, provides in relevant part:

A. Any person who, pursuant to a scheme or artifice to defraud, *knowingly* obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony.

Laws 1980, ch. 229, § 25, effective April 23, 1980 (emphasis added).

The precursor to A.R.S. § 13–2310 was § 13–320.01, which provided in part:

Any person who, pursuant to a scheme or artifice to defraud, *knowingly and intentionally* obtains or attempts to obtain money, property or any other thing of value by means of false or fraudulent pretenses, representations or promises is guilty of a felony....

(1976) (emphasis added).

It is the removal of the phrase "and intentionally" which seems to have caused the confusion regarding the appropriate mental state required by the statute.

In construing a statute it is helpful to look at its origin. A.R.S. § 13–2310 and its predecessor A.R.S. § 13–320.01 were both adopted from 18 U.S.C. § 1341, the federal mail fraud statute.[2]

Although the legislature deleted the words "and intentionally" when drafting A.R.S. § 13–2310, it retained the "scheme or artifice to defraud" language from 18 U.S.C. § 1341. In *State v. Haas,* 138 Ariz. 413, 418, 675 P.2d 673, 678 (1984), we noted the construction placed on these terms by the federal courts:

The federal mail fraud statute encompasses a broad range of fraudulent activities. Both the federal and state statutes proscribe a "scheme or artifice to defraud." This element is not defined according to any technical standard. *United States v. Pearlstein,* 576 F.2d 531, 535 (3d Cir.1978). The scheme need not be fraudulent on its face but "must involve some sort of fraudulent misrepresentations *or omissions* reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* (emphasis supplied) (citations omitted). The statute requires proof of the specific intent to defraud. *Pearlstein,* 576 F.2d at 537; *United States v. Payne,* 474 F.2d 603, 604 (9th Cir.1973). The intent to defraud can be established by proving the defendant devised the fraudulent scheme or wilfully participated in it with knowledge of its fraudulent nature. *Pearlstein,* 576 F.2d at 537–38. "Fraudulent representations," as that term appears in § 1341, may be effected by deceitful statements or half-truths or even the concealment of material facts. (citations omitted).

The state argues that the Arizona statute construed in *Haas* was amended to eliminate "intent" and require only "knowledge." Under the rules of statutory construction there is a presumption that when the legislature alters the language of a statute it intended to create a change in the existing law. *State v. Kozlowski,* 143 Ariz. 137, 692 P.2d 316 (App.1984). There is merit to the state's contention. The present statute has shifted the focus of the culpable mental state of the offender from knowing and intentional to that of knowledge only. As the statute has been amended, the state need not prove in every in-

---

2. In pertinent part, the federal mail fraud statute provides that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing ... shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1341 (1976).

stance that the accused intended to defraud anyone. The statute does, however, require the state to prove that the person charged knew that there was a scheme or artifice to defraud and acted pursuant to the scheme to obtain a benefit.

Giving effect to all of the language used in the statute, we hold that in *all* cases, in order to convict a person of violating A.R.S. § 13–2310, the state must prove:

1) that a plan or scheme existed;
2) that the purpose of such plan or scheme was to defraud others;
3) that, knowing the purpose of the scheme, the defendant pursuant to the scheme obtained a benefit;
4) by means of false pretenses, representations, promises or material omissions.

However, the state is not required in all cases to prove that the person charged devised the scheme. The statute is violated by one who makes false representations to obtain a benefit with knowledge of the fraudulent scheme and in furtherance of it.

The statute does, however, continue to require that the state prove the existence of a "scheme or artifice to defraud." As pointed out in *Haas,* these words, taken from the federal statute, have well-defined meanings. Since the legislature did not change these words, we assume that they intended that they continue to have the same meaning formerly ascribed to them. Thus, the state continues to carry the burden of proving that the alleged scheme or artifice was designed by *someone* with the intent to defraud. Where, as in the present case, the defendant is the one who devised the scheme,[3] the state was required to prove that the defendant knowingly obtained a benefit by means of false pretenses, etc., and that he intended to defraud others.

The defendant denied any intention to defraud anyone. He ascribed the business failure to his employees abandoning the project. There is nothing illegal about a

business failing and customers losing deposits. The bankruptcy courts consider thousands of such unfortunate occurrences. It is quite another matter if a business receives money based on promised performance which was never intended to be carried out. That is fraud. Thus, to prove that the defendant's scheme was fraudulent rather than simply a failed business venture, the state in the present case was required to prove that the defendant in devising and carrying out his scheme intended to defraud his customers. Absent the establishment of a scheme to defraud, there can be no violation of A.R.S. § 13–2310.

In summary, the amended statute does not always require that a defendant have an intent to defraud to be found culpable, but the statute does require that the state prove that the defendant acted pursuant to a scheme or artifice to defraud. This means that it is necessary that the state prove that the scheme or artifice was intended to defraud. Thus, in those cases in which the defendant is the one who devised the scheme, the state must prove that the defendant devised the scheme with the intent to defraud.

We are satisfied that the evidence presented at trial was sufficient to meet the state's burden of proof as we have defined it.

## ADEQUACY OF JURY INSTRUCTION

The question remains whether the trial court adequately instructed the jury on the elements necessary for a conviction under A.R.S. § 13–2310. The primary test for jury instructions is whether the instructions considered as a whole, sufficiently instructed the jury on the proper rule of law. *Kauffman v. Schroeder,* 116 Ariz. 104, 106, 568 P.2d 411, 413 (1977), *superseded on other grounds by A.R.S. § 28–602(2)(a).*

The instructions given at trial were:

The crime of fraudulent scheme and artifices requires proof of the following four

---

**3.** Although the defendant employed Mary Ann Gray to handle customer telephone solicitations, there is no proof in the record that Gray knew

of the fraudulent nature of defendant's business, nor that she received any compensation for her participation in the business.

things: the defendant (1) knowingly, (2) pursuant to a scheme or artifice to defraud, (3) obtained any benefit (4) by means of false pretenses, representations, promises or material omissions.

Scheme or artifice to defraud means to form a plan, device or trick to perpetrate a fraud upon another.

The word benefit means anything of value or advantage, present or prospective. A fraudulent representation may be effected by deceitful statements, half-truths or the concealment of any material fact as well as by affirmative statement or acts. The State does not need to prove that any person relied on the representations.

The instructions also included the definitions used in A.R.S. § 13–105(6)(a) and (b) to define the terms "intentionally" or "with the intent to" and "knowingly."

The challenged instruction required that the proof show, as one of the elements of the crime charged, that the defendant obtained a benefit pursuant to a scheme or artifice to defraud. Scheme or artifice to defraud was defined as meaning "to form a plan, device, or trick to perpetrate a fraud upon another."

The defendant challenged the trial court's refusal to give his requested instructions on the issue of specific intent.[4] However, a particular instruction need not be given where others, actually given, adequately set forth the law. *State v. Via,* 146 Ariz. 108, 124, 704 P.2d 238, 254 (1985), *cert. den. sub nom., Via v. Arizona,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986).

---

4. Defendant's requested instructions read:

(1) The law requires the State to prove beyond a reasonable doubt that a scheme or artifice to defraud existed. The term "scheme" means "plan". The term "artifice" means "evil or artful strategy". The term "fraudulent" means "reasonably calculated to deceive persons of ordinary prudence and comprehension". Thus a scheme or artifice to defraud is a plan or evil or artful strategy reasonably calculated to deceive persons of ordinary prudence and comprehension. If you find that there is a reasonable doubt as to the existence of any such plan or strategy, you should acquit Mr. Bridgeforth of the counts alleging fraud.

The instructions given by the trial court were sufficient. They made clear that the crime charged required the state to prove that the defendant formed, and acted pursuant to, a plan whose object was to perpetrate a fraud upon another person, and that the defendant knowingly obtained a benefit by means of false pretenses, etc. There was no need to give the defendant's requested instructions because those given adequately covered the subject.

The opinion of the Court of Appeals is approved as modified by the views expressed herein. The judgment of the trial court is affirmed as modified by the Court of Appeals.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON, J., concur.

MOELLER, J., did not participate in the determination of this matter.

(2) If you find that Mary Ann Gray and Richard Bridgeforth had no evil plan in mind and did not intend to defraud anybody, you should acquit Richard Bridgeforth of the fraud counts.

(3) Unless Richard Bridgeforth specifically intended to defraud the clients of B & B International, he cannot be found guilty of those charges. The crime of fraud requires that the person so accused have as his objective the defrauding of others. If you find that this was not Richard Bridgeforth's intent or objective, you should acquit him of those charges.