NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PERLA M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, GILBERTO P-C., K.P-M., *Appellees*.

No. 1 CA-JV 19-0431

FILED 8-4-2020

Appeal from the Superior Court in Maricopa County
No. JD36118
The Honorable Jo Lynn Gentry, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Gillespie, Shields, Goldfarb & Taylor, Phoenix
By DeeAn Gillespie Strub, Kristina Reeves
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

Denise L. Carroll Attorney at Law, Scottsdale
By Denise L. Carroll
*Counsel for Appellee Gilberto P-C.*

---

**MEMORANDUM DECISION**

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge Peter B. Swann joined.

---

**W I L L I A M S**, Judge:

**¶1**        Perla M. ("Mother") challenges the juvenile court's order changing physical custody of her child, K.P-M. ("Child"). For the following reasons, we accept special action jurisdiction and grant relief.

### FACTUAL AND PROCEDURAL HISTORY[1]

**¶2**        Mother and Gilberto P-C. ("Father"), have one child in common born in 2017. In July 2018, Child was admitted to the hospital with a two-day fever and mouth ulcers. Hospital staff observed multiple bruises on Child, and an x-ray revealed a skull fracture. Child was transported to Phoenix Children's hospital, where more bruises and lacerations were discovered.

**¶3**        At that time, Child was living with Mother, who received caretaking assistance from family members. Father had been deported to Mexico and was unable to be located. Mother claimed Child received the injuries learning to walk, but a doctor determined Child's injuries were inconsistent with this explanation. Neither Mother, nor any family members with whom she lived, provided sufficient explanation for Child's injuries. Mother agreed to sign a Present Danger Plan, temporarily placing Child in foster care. DCS then filed a dependency petition alleging Child was dependent as to both parents and obtained an order placing Child into temporary Arizona Department of Child Safety ("DCS") custody. The following month, Child was placed with relatives.

**¶4**        In September 2018, the juvenile court found Child dependent as to Mother. Around the same time, DCS located Father in Mexico. The juvenile court found Child dependent as to Father in January 2019. In September 2019, Mother motioned to regain physical custody of Child

---

[1] Mother's opening brief contains citations to attached appendix items not included in the record on appeal. We disregard any factual assertions referring to items not in the record. *See* ARCAP 13.1(b).

under Rule 59 of the Arizona Rules of Procedure for the Juvenile Court. The motion was denied.

¶5        In November 2019, DCS filed a motion for change in physical custody, intending to transfer custody of Child to Desarrollo Integral de la Familia ("DIF"), Mexico's counterpart to DCS, to facilitate placement with Father in Mexico. DCS noted Mother's objection in its motion. On December 3, Mother obtained new counsel. On December 10, the court held a report and review hearing, at which Mother's new attorney argued due process required an evidentiary hearing on the motion for change in physical custody, and indicated she believed Mother's response to the motion was due two days later. When DCS argued a hearing was not necessary, the court indicated it "need[ed] to wait for the response time to lapse" before it could act without a hearing. The court informed Mother's counsel, "I need a response before I can set anything."

¶6        Two days later, on December 12, the juvenile court entered an order granting DCS's motion. Mother claimed she timely emailed DCS a copy of the response that day, as well as a second Rule 59 motion requesting the return of Child to her custody, but acknowledged she failed to file either with the court until December 13. On December 16, in response to the court's order granting DCS's motion, Mother filed a motion for reconsideration and motion to stay, which the court denied.

¶7        On December 19, Mother timely filed a notice of appeal from the change in physical custody order. On January 14, 2020, Mother filed a motion with the juvenile court to schedule a hearing on her December 13 Rule 59 motion. On January 23, the juvenile court denied the request for a hearing, concluding the motion was moot. On February 6, Mother filed her opening brief in the present case, which included a request to review the court's denial of her second Rule 59 motion in addition to the change in physical custody order she originally appealed.

¶8        On June 18, 2020 we issued an order: (1) treating the direct appeal as a special action, (2) accepting special action jurisdiction, (3) granting relief, (4) vacating the order for change in physical custody issued December 12, 2019, (5) remanding the matter to allow the juvenile court to make findings on the motion for change in physical custody pursuant to A.R.S. § 8-514 and considering the child's "best interests," (6) remanding for a hearing on Mother's Rule 59 motion filed December 13, 2019, and (7) informing a written decision would follow. This is the written decision.

**DISCUSSION**

*I.     Jurisdiction*

**¶9**        "This court has an independent obligation to determine whether it has appellate jurisdiction." *Jessicah C. v. Dep't of Child Safety*, 248 Ariz. 203, ¶ 8 (App. 2020). If we lack appellate jurisdiction, we must dismiss the appeal. *Dabrowski v. Bartlett*, 246 Ariz. 504, 511, ¶ 13 (App. 2019).

*A.     Change of Physical Custody Order*

**¶10**        "Appellate jurisdiction is defined by statute." *Jessicah C.*, 248 Ariz. at 203, ¶ 9. Under A.R.S. § 8-235(A), "[a]ny aggrieved party in any juvenile court proceeding under this title may appeal from a final order of the juvenile court to the court of appeals." *See also* Ariz. R.P. Juv. Ct. 103(A). "[B]ecause dependency proceedings implicate the 'important and fundamental right to raise one's children,'" we do "not apply a 'narrow, technical conception of what constitutes a final order' under A.R.S. § 8-235(A)." *Jessicah C.*, 248 Ariz. at 203, ¶ 15 (quoting *Brionna J. v. Dep't of Child Safety*, 247 Ariz. 346, 349, ¶ 8 (App. 2019)). Rather, we consider the order's "practical effect." *Id.* Although we previously accepted special action jurisdiction, we find it appropriate to decide whether we also have appellate jurisdiction over this matter.

**¶11**        Father suggests we lack jurisdiction because the change in physical custody order is not an appealable final order, citing to *Jessicah C.* In *Jessicah C.*, we held an order changing physical custody did not qualify as a final order when it did not change the child's dependent status and did not have a "'substantial impact' on a parent's ability to participate in services." 248 Ariz. 203, ¶ 15 (quoting *Brionna J.*, 247 Ariz. at 349, ¶ 10). However, in *In re Maricopa Cty. Juv. Action No. JD-500116*, 160 Ariz. 538, 542 (App. 1989), we held an order changing a child's placement to another state constituted an appealable order because it had "a substantial impact on the natural father's practical ability to have any contact with his child."

**¶12**        Here, the juvenile court's change in physical custody order authorized moving the Child from the physical custody of a family member residing in Arizona to DIF, a Mexican governmental agency. Surely the movement of the child to another country will have a "substantial impact" on Mother's ability to have contact with the Child. And, although a petition for special action may have precipitated a more expeditious review of the change in physical custody order given the time-sensitive nature of placement in a dependency, we conclude the order in this case is a final

appealable order. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

### B.     Rule 59 Motion

**¶13**      Mother filed her second Rule 59 motion on December 13, the day after the court granted DCS's motion for change in physical custody. On December 19, Mother filed this appeal, which specifically requested review of only the court's December 12 change in physical custody order. On January 14, 2020, Mother filed a motion with the juvenile court to schedule a hearing on her Rule 59 motion, which the court denied as moot on January 23. Mother did not initiate a new appeal based upon the Rule 59 motion. Instead, Mother filed an opening brief in the present appeal which included a request to consider her opening brief as a petition for special action regarding her Rule 59 argument.[2]

**¶14**      Mother concedes that, because the juvenile court had not yet denied her Rule 59 motion when Mother filed this appeal, it is not an appealable order. However, even if the court had ruled, the resulting order still would not be a "final order" from which an appeal could be taken. *See Brionna J.*, 247 Ariz. at 350, ¶ 10. Regardless, review by this court should be available. And "[g]iven the fluid, time-sensitive nature of placement determinations," *id.* at 350, ¶ 14, review by special action is most appropriate. *See Jessicah C.*, 248 Ariz. at 119, ¶ 16. "Indeed, review by special action is preferable because it allows an accelerated review by this court." *Id.* Thus, considering the interests involved, including the child's best interests, in the exercise of our discretion we treat Mother's appeal as a petition for special action and accept special action jurisdiction. *Id.* at 119, ¶ 17.

### II.     Due Process Claims

**¶15**      Mother argues her state and federal rights to due process were violated when the court granted DCS's motion for change in physical custody without an evidentiary hearing.[3] We review due process claims *de*

---

[2] Mother titled her opening brief "Appellant's Opening Brief, or, Alternatively, Petition for Special-Action Relief."

[3] Mother argues the Arizona due process clause provides more protection than its federal counterpart in the parental rights context. Although Mother points to cases expanding the right to counsel under the Arizona constitution, she fails to support her argument for expansion in this context.

*novo, State ex rel. Dep't of Econ. Sec. v. Torres*, 245 Ariz. 554, 560, ¶ 23 (App. 2018), but review placement orders of dependent children for abuse of discretion. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8 (App. 2008).

**¶16**        DCS counters that Mother waived her due process claims by failing to raise them with the juvenile court. However, at the December 10 report and review hearing, Mother argued that "due process requires an evidentiary hearing" on the change in physical custody motion. By doing so, Mother preserved her argument regarding her right to an evidentiary hearing.

**¶17**        "The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness." *State v. Melendez*, 172 Ariz. 68, 71 (1992). "Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Cook v. Losnegard*, 228 Ariz. 202, 206, ¶ 18 (App. 2011) (quoting *Curtis v. Richardson*, 212 Ariz. 308, 312, ¶ 16 (App. 2006)). It is also "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Under Arizona Rule of Procedure for the Juvenile Court 46(C), "[t]he court may rule on the motion, *with or without a hearing*, if the motion states there is no objection *or the time for filing an objection has expired*." (Emphasis added.)

**¶18**        Here, Mother did not file her response to DCS's motion until the day after the time for filing the response had expired.[4] The court did not deny Mother's request for a hearing; rather, the court indicated it required a written response before it would set a hearing, which was consistent with Rule 46. Therefore, Mother had the *opportunity* for a hearing—she needed only file a timely response, but lost that opportunity when the filing

---

[4] DCS's motion indicates it was electronically delivered to Mother's counsel on November 26, 2019. If this were accurate, the response would have been due five business days later, on December 5. *See* Ariz. R.P. Juv. Ct. 46(C). However, at the hearing, Mother's counsel indicated she believed the response was due December 12. This would have been correct had the motion been served by mail. *See id.* Because the record does not confirm the actual manner of service, neither opposing counsel, nor the court corrected or challenged the statement at the hearing, and the later date does not prejudice Mother, we will use December 12 as the proper due date.

deadline expired.[5] And, although at the December 10 hearing Mother's counsel indicated Mother "is certainly going to be responding," the *intention* to object is insufficient to preserve the right to a hearing under Rule 46. On this record, the juvenile court did not abuse its discretion in granting the motion without a hearing.

**¶19** Mother further argues the court deprived her of due process under the Arizona constitution by applying the incorrect standard and failing to analyze factors required under A.R.S. § 8-514 in making its findings. Specifically, Mother argues the court erred when it indicated "placement was the least restrictive consistent with the *needs* of the child," without any apparent consideration of the statutory factors. (Emphasis added.) DCS opted not to address the merits of Mother's claim, arguing the claim was waived when Mother failed to raise it with the juvenile court. However, it was only after the court issued its order that Mother first became aware of what findings, or lack thereof, the court based its order upon. *See Cruz v. Garcia*, 240 Ariz. 233, 236, ¶ 10 (App. 2016) (indicating a party does not have a duty to object to a final, appealable order to preserve error therein). Thus, Mother did not waive her argument because she raised it in her opening brief.

**¶20** When considering a change in physical custody for a child, A.R.S. § 8-514(B) requires that DCS, and in turn the juvenile court, place the "child in the least restrictive type of placement available, consistent with the *best interests* of the child." (Emphasis added.) Subsection G of the same statute, added by our legislature in 2018, identifies a minimum of eleven additional factors to be considered in determining a child's best interests. The record does not demonstrate the court made any "best interests" determination in granting the motion for change of physical custody. Rather, the court's order was granted based only upon the following express findings: (1) "upon motion of [DCS]," (2) "good cause appearing," and (3) "[t]he proposed placement is the least restrictive consistent with the needs of the child."

**¶21** The order, prepared by DCS and endorsed by the court, included outdated statutory language regarding the "needs" of the child, rather than the current statutory language regarding the "best interests" of the child. Were we to simply gloss over the court's findings based upon the child's "needs" rather than the statutorily required "best interests,"

---

[5] Although the order is time-stamped 3:45 p.m., before the close of the business day on the due date, because Mother did not file until 12:26 p.m. the next day, she was not prejudiced.

equating the two as the same, we would violate "the rule of statutory construction that requires us to presume that 'when the legislature alters the language of a statute[,] it intended to create a change in the existing law.'" *In re Paul M.*, 198 Ariz. 122, 124, ¶ 6 (App. 2000) (quoting *State v. Bridgeforth*, 156 Ariz. 60, 63 (1988)). Thus, the court abused its discretion by ordering a change in Child's physical custody without considering the Child's "best interests," as well as those compulsory factors set forth in A.R.S. § 8-514. Consequently, we remand to allow the juvenile court to make findings consistent with the current statutory requirement; and, because the change in physical custody order lacked mandatory findings, the court erred in dismissing, as moot, Mother's second Rule 59 motion.

**¶22** On remand, the juvenile court should not feel constrained to base its determination solely upon the evidence it previously had before it. Rather, the court is free to hold additional hearings, for both the change in physical custody motion and Mother's second Rule 59 motion, to ensure it has all current, relevant evidence before it in determining what actions will be in the child's "best interests." *See Dep't of Child Safety v. Beene*, 235 Ariz. 300, 304, ¶9 (App. 2014) ("In dependency and severance proceedings, 'the child's best interests are paramount.'") (quoting *Don L. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 556, 559, ¶ 7 (App. 1998)); Ariz. R.P. Juv. Ct. 36 (providing that rules governing these proceedings "should be interpreted in a manner designed to protect the best interests of the child, giving paramount consideration to the health and safety of the child"); *see also Alexander M. v. Abrams*, 235 Ariz. 104, 107, ¶ 15 (2014) ("Arizona's statutes, case law and rules of procedure reflect that the juvenile court is obligated to oversee the dependency case, [and] to consider the best interests of the child in every decision . . . .").

## CONCLUSION

**¶23** For the foregoing reasons, we vacate the court's order granting change in physical custody and remand for further proceedings to properly consider both DCS's motion for change in physical custody, as well as Mother's second Rule 59 motion.

