27 P.3d 804

**In re KYLE M.**

**No. 1 CA–JV 00–0179.**

Court of Appeals of Arizona,
Division 1, Department E.

June 7, 2001.

Janet Napolitano, Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Richard M. Romley, Maricopa County Attorney, by Rene Williams, Phoenix, Attorneys for Appellee.

James Haas, Maricopa County Public Defender, by Theresa M. Armendarez, Mesa, Attorneys for Appellant.

## OPINION

TIMMER, Presiding Judge.

¶ 1 The juvenile court adjudicated Kyle M. delinquent for threatening or intimidating, in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–1202(A)(1) (Supp. 2000). Kyle argues we should reverse because the State failed to prove that he (1) acted with "wrongful intent," as required by the statute, and (2) uttered a "true threat" to the victim. He further contends that if A.R.S. section 13–1202(A)(1) does not require a perpetrator to act with wrongful intent, it is unconstitutionally vague and overbroad. We have jurisdiction pursuant to A.R.S. sections 12–120.21(A)(1) (1992) and 8–235(A) (Supp.2000).

¶ 2 For the reasons that follow, we hold that A.R.S. section 13–1202(A)(1) does not require the State to prove a defendant or juvenile acted with "wrongful intent," although the State must demonstrate that the perpetrator communicated a "true threat." We further decide the evidence sufficiently proved that Kyle voiced such a threat to his victim. Finally, we conclude Kyle waived his challenge to the constitutionality of A.R.S. section 13–1202(A)(1) because he failed to raise it to the juvenile court, and we decline to exercise our discretion to address it.

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 During track practice in March, 2000, Kyle, a thirteenyear-old junior high school student, told Jennifer, his classmate, that he was upset because his girlfriend, Jessica, had "dumped" him the day before in order to date another classmate, Andrew. He was also angry because another classmate, Deseree, had thrown away a rose that he had given Jessica. Kyle then told Jennifer that he was going to bring a gun to school and shoot Andrew and Deseree. He characterized his plan as "a Columbine thing." [1]

¶ 4 The next morning at school, Kyle approached Jennifer while she was speaking with two friends, grabbed her wrist, and told her that if she told anybody what he had said, he would kill her. He then walked away. According to one witness, Kyle appeared "nervous" and "[s]eemed just like he knew something was going to happen, so he was going to try to defend himself." She and her companions then reported the incident to the school principal. Jennifer was extremely upset by Kyle's words and started to cry as she made her report. Jennifer also related her conversation with Kyle from the previous day.

¶ 5 The State filed a delinquency petition alleging that Kyle threatened or intimidated Jennifer, Andrew, and Deseree in violation of A.R.S. section 13–1202(A)(1). After the adjudication hearing, the juvenile court dismissed the counts relating to Andrew and Deseree, but found Kyle delinquent for threatening and intimidating Jennifer.

## STANDARD OF REVIEW

¶ 6 We review the juvenile court's interpretation of A.R.S. section 13–1202(A)(1) *de novo*. *State v. Jensen*, 193 Ariz. 105, 107, ¶ 16, 970 P.2d 937, 939 (App.1998). We will not re-weigh the evidence, and we will only reverse on the grounds of insufficient evidence when there is a complete absence of

---

1. On April 20, 1999, two students from Columbine High School in Colorado shot fellow students and teachers while at school, killing and wounding several people.

probative facts to support a judgment or when a judgment is clearly contrary to any substantial evidence. *State v. Sanders,* 118 Ariz. 192, 196, 575 P.2d 822, 826 (App.1978). We view the evidence in the light most favorable to sustaining the adjudication. *In re Julio L.,* 197 Ariz. 1, 2–3, ¶ 6, 3 P.3d 383, 384–85 (2000).

## DISCUSSION

### I.  Intent under A.R.S. § 13–1202(A)(1)

¶ 7 Kyle initially argues the juvenile court erred in adjudicating him delinquent because the State failed to prove that he acted with "some degree of wrongful intent" in threatening Jennifer.  Although Kyle does not specifically describe the nature of such "wrongful intent," we are guided by his argument to the juvenile court that the State was required to prove Kyle intended to either harm or scare Jennifer.  The State counters it was not required to prove that Kyle acted with intent or any other culpable mental state because A.R.S. section 13–1202(A)(1) is a strict liability crime.

■ ¶ 8 Section 13–1202 provides, in pertinent part, as follows:

> A.  A person commits threatening or intimidating if such person threatens or intimidates by word or conduct:
>
> 1.  To cause physical injury to another person or serious damage to the property of another. . . .

¶ 9 While Kyle acknowledges that A.R.S. section 13–1202(A)(1) does not explicitly require the State to prove a *mens rea,* he argues the statute implicitly requires proof of "wrongful intent."  As support for his contention, Kyle relies on A.R.S. section 13–202(B) (1989), which provides as follows:

> If a statute defining an offense does not expressly prescribe a culpable mental state that is sufficient for commission of the offense, no culpable mental state is required for the commission of such offense, and the offense is one of strict liability *unless the proscribed conduct necessarily involves a culpable mental state.*

(Emphasis added.)

¶ 10 Kyle contends threatening to cause physical injury to another "necessarily involves" an element of wrongful intent, although he fails to explain the basis for his conclusion.  In order to resolve the issue, we must ascertain the legislature's intent in enacting A.R.S. section 13–1202(A)(1).  *See State v. Cutshaw,* 7 Ariz.App. 210, 221, 437 P.2d 962, 973 (1968) ("[W]hether a statute condemns conduct, regardless of intent, is initially a problem of ascertaining the legislative intent.").  We divine such intent by examining the legislative history of A.R.S. section 13–1202(A)(1).  *See In re Paul M.,* 198 Ariz. 122, 124, ¶ 4, 7 P.3d 131, 133 (App.2000) (" 'Legislative intent often can be discovered by examining the development of a particular statute.' " (quoting *Carrow Co. v. Lusby,* 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990))).

¶ 11 In 1977, the legislature added the crime of threatening or intimidating as A.R.S. section 13–1202(A)(1), which a person committed by threatening or intimidating "by word or conduct *with the intent* . . . to cause physical injury to another person or serious damage to property of another."  1977 Ariz. Sess. Laws, ch. 142, § 61 (emphasis added).  Under this version of the statute, therefore, the State was required to prove that the defendant's objective was to physically injure another or seriously damage property.

¶ 12 In 1978, before A.R.S. section 13–1202(A)(1) became effective, the legislature deleted the phrase "with the intent" from the statute and instead provided that a person commits threatening or intimidating "if such person *with the intent to terrify* threatens or intimidates by word or conduct . . . [t]o cause physical injury to another person· or serious damage to property of another."  1978 Ariz. Sess. Laws, ch. 201, § 128 (emphasis added).  Thus, to secure a conviction or adjudication under this version of the statute, the State was required to prove the defendant intended to fill the victim with intense fright.  *State v. Morgan,* 128 Ariz. 362, 367, 625 P.2d 951, 956 (App.1981); *see also State v. May,* 137 Ariz. 183, 189, 669 P.2d 616, 622 (App.1983) (holding the crime of attempted threatening

.. 

or intimidating requires proving defendant intended to place victim in state of terror in anticipation of the threatened harm).

¶ 13 In 1994, the legislature amended A.R.S. section 13–1202(A) by deleting the phrase "with the intent to terrify." 1994 Ariz. Sess. Laws, ch. 200, § 11. But the legislature did not insert any words describing a culpable mental state. Consequently, since the effective date of the 1994 amendment, a person commits threatening or intimidating "if such person threatens or intimidates by word or conduct . . . to cause physical injury to another person or serious damage to the property of another." *Id.*

■ ¶ 14 When the legislature modifies the language of a statute, we must presume it intended to change the existing law. *State v. Averyt,* 179 Ariz. 123, 128, 876 P.2d 1158, 1163 (App.1994); *see also State v. Bridgeforth,* 156 Ariz. 60, 63–64, 750 P.2d 3, 6–7 (1988) (holding that statutory amendment eliminating phrase "and intentionally" changed culpable mental state from "knowing and intentional" to only "knowing"). Kyle urges us to hold that "threatening or intimidating" necessarily includes the culpable mental state of "wrongful intent." But we cannot reinsert into A.R.S. section 13–1202(A)(1) under the guise of judicial construction words of limitation that the legislature has expressly deleted. *See Averyt,* 179 Ariz. at 129, 876 P.2d at 1164 ("By reintroducing a specific intent to evade the payment of a tax, we would be encroaching upon the legislature's power to define the acts that constitute crimes."); *see also In re Paul M.,* 198 Ariz. at 124, ¶ 6, 7 P.3d at 133 ("To accept the state's argument that 'abusing' includes 'insulting' would mean that the legislature's amendment of § 15–507 [deleting language making it an offense to insult a teacher] was purely formal, without substantive significance or practical effect."). Consequently, we decline to interpret A.R.S. section 13–1202(A)(1) as requiring the State to prove that a defendant acted with "wrongful intent" by threatening to cause physical injury to another or seriously damage property.[2]

■ ¶ 15 Although we hold a person does not need to act with "wrongful intent" in order to violate section 13–1202(A)(1), we do not agree with the State that this offense is a strict liability crime. Although the legislature is empowered to enact strict liability crimes, *Cutshaw,* 7 Ariz.App. at 220–21, 437 P.2d at 972–73, it must clearly communicate an intent not to require proof of any culpable mental state. *State v. Williams,* 144 Ariz. 487, 488, 698 P.2d 732, 733 (1985). As we next explain, because one violates section 13–1202(A)(1) only by communicating a "true threat," a culpable mental state is necessarily involved in the commission of the offense, and it is not a strict liability crime. A.R.S. § 13–202(B).

## II. "True Threat"

¶ 16 Kyle argues the juvenile court erred in adjudicating him delinquent because the State failed to prove that he uttered a "true threat," as that concept has been developed in the federal courts.[3] The State responds that the legislature did not limit the reach of A.R.S. section 13–1202(A)(1) to "true threats." Thus, before addressing the sufficiency of the evidence to support the adjudication, we must determine the legislature's intent in proscribing "threatening."

■ ¶ 17 To determine legislative intent, we first review a statute's language. *Calmat of Arizona v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993). The legislature did not define the term "threaten" in A.R.S. section 13–1202(A). Consequently, we will ascribe ordinary meaning to the word unless the context of the statute suggests a different definition. *Kessen v. Stewart,* 195 Ariz. 488, 491, ¶ 6, 990 P.2d 689, 692 (App. 1999).

■ ¶ 18 According to Webster's Dictionary, a person "threatens" another by uttering "an expression of intention to inflict evil,

---

2. In light of our holding, we do not address the State's contention that it sufficiently proved that Kyle intended to frighten or harm Jennifer.

3. The State argues Kyle has waived this argument by failing to raise it to the juvenile court. We have reviewed the hearing transcripts and conclude Kyle sufficiently raised the issue in his closing argument.

injury, or damage." *Webster's Ninth New Collegiate Dictionary* 1228–29 (1989). As pointed out by Kyle, however, this definition includes "threats" conveyed as expressions of political hyperbole and those made in jest or during idle talk. For example, telling a co-worker that she will be killed if she takes the last donut fits within the sweep of this definition. Certainly, the legislature did not intend to criminalize such speech. *See State v. Medrano–Barraza,* 190 Ariz. 472, 474, 949 P.2d 561, 563 (App.1997) ("We presume the framers of the statute did not intend an absurd result and our construction must avoid such a consequence."). To avoid such preposterous results, we decide that the legislature intended only to criminalize *genuine* expressions of intent to either inflict bodily harm or seriously damage property of another.

¶ 19 Our construction of the term "threatens" is also supported by the principle that we must construe A.R.S. section 13–1202(A)(1), if possible, to avoid making it unconstitutional. *Hayes v. Cont'l Ins. Co.,* 178 Ariz. 264, 272, 872 P.2d 668, 676 (1994). Kyle argues that unless we narrow the meaning of "threatens," A.R.S. section 13–1202(A)(1) criminalizes constitutionally protected speech. We agree.

¶ 20 In *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), the Supreme Court addressed free speech considerations in interpreting a statute proscribing "threats." While attending a rally at the Washington Monument, Watts reportedly declared that he would not enter the army and that "[i]f they ever make me carry a rifle the first man I want to get in my sights is [President Johnson]." *Watts,* 394 U.S. at 706, 89 S.Ct. 1399. On the basis of this statement, Watts was convicted of knowingly and willfully threatening the President in violation of 18 U.S.C. § 871(a). *Id.* at 705–06, 89 S.Ct. 1399. The Court reversed, holding "a statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." *Id.* at 707, 89 S.Ct. 1399. It then concluded that

Watt's remark, "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners," was simply a crude statement of political opposition to the President and not a "true threat." *Id.* at 708, 89 S.Ct. 1399.

¶ 21 Cases decided since *Watts* have established an objective test for establishing whether a defendant has uttered a "true threat":

Thus, in order for the government to establish a "true threat" it must demonstrate that the defendant made a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [a person].

*United States v. Khorrami,* 895 F.2d 1186, 1192 (7th Cir.1990) (quoting *United States v. Hoffman,* 806 F.2d 703, 707 (7th Cir.1986)). "[T]he statement [must also] not be the result of mistake, duress, or coercion." *Roy v. United States,* 416 F.2d 874, 877 (9th Cir. 1969); *accord United States v. Viefhaus,* 168 F.3d 392, 395–96 (10th Cir.1999); *United States v. Orozco–Santillan,* 903 F.2d 1262, 1265–66 (9th Cir.1990); *In re Steven S.,* 25 Cal.App.4th 598, 31 Cal.Rptr.2d 644, 647–48 (1994).

¶ 22 We believe the "true threat" doctrine developed in these cases reflects our legislature's intent in proscribing genuine threats under A.R.S. section 13–1202(A)(1), and we therefore adopt it. This interpretation of "threat" sufficiently narrows the words or conduct prohibited without infringing upon the privileges of free speech guaranteed by our state and federal constitutions. *See Madsen v. Women's Health Center,* 512 U.S. 753, 773, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) ("Clearly, threats ... are proscribable under the First Amendment."); *see also R.A.V. v. City of St. Paul,* 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ("threats of violence are outside the First Amendment ...").

¶ 23 For these reasons, we decide the State was required to prove that Kyle ut-

tered a "true threat" to Jennifer. He expressed such a threat if, under the circumstances, a reasonable person would foresee that his words would be taken as a serious expression of an intent to inflict bodily harm, and his statements were not the result of mistake, duress, or coercion. The State was not required to demonstrate Kyle had the ability to carry out his threat or that he actually intended to do so. We now determine whether the State sufficiently proved that Kyle violated A.R.S. section 13–1202(A)(1).

¶ 24 Kyle grabbed Jennifer's wrist and told her to keep quiet about their prior conversation or he would kill her. The day before, he had informed Jennifer that he had a "hit list" and planned to bring a gun to school to kill two students in a "Columbine thing." This evidence supports a conclusion that a reasonable person in these circumstances would foresee that his words would be taken as a serious expression of an intent to inflict bodily harm. No evidence was presented suggesting that Kyle made his statements as a result of mistake, duress, or coercion. We therefore defer to the juvenile court's determination that the State sufficiently proved Kyle delinquent under A.R.S. section 13–1202(A)(1). *Sanders,* 118 Ariz. at 196, 575 P.2d at 826.

### III. Overbreadth and Vagueness

¶ 25 Kyle also argues A.R.S. section 13–1202(A)(1) is unconstitutionally vague and overbroad. As noted by the State, and not contested by Kyle, he did not raise these issues to the juvenile court. Thus, Kyle waived these arguments, and we need not address them although we may choose to do so. *See State v. Ochoa,* 189 Ariz. 454, 459, 943 P.2d 814, 819 (App.1997) ("[W]e have discretionary authority to consider an argument for the first time on appeal when a defendant asserts that a statute is void."). We decide not to resolve the constitutional issues raised by Kyle because most of his arguments are rendered moot by our conclusion that the State must prove a "true threat" to secure a conviction or adjudication under A.R.S. section 13–1202(A)(1).

## CONCLUSION

¶ 26 For the foregoing reasons, we affirm.

CONCURRING: EDWARD C. VOSS, Judge and JON W. THOMPSON, Judge.