NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE STEVEN M.

No. 1 CA-JV 18-0171
FILED 9-13-2018

---

Appeal from the Superior Court in Yavapai County
No. V1300JV201880025
The Honorable Anna C. Young, Judge

**REVERSED**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Yavapai County Attorney's Office, Prescott
By Amy Drew
*Counsel for Appellee State of Arizona*

_____

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

_____

**W I N T H R O P**, Judge:

**¶1**        Steven M. ("Juvenile") argues that insufficient evidence supports the superior court's order adjudicating him delinquent of threatening or intimidating, a Class 1 misdemeanor, under Arizona Revised Statutes ("A.R.S.") section 13-1202.  We agree and reverse the order.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**        In January 2018, one of Juvenile's high school teachers ("Teacher") engaged his twenty-two students in a conversation about recent school shootings.  Most everyone participated in the conversation, and although serious, the discussion also contained some levity.  During this conversation, according to Teacher, sixteen-year-old Juvenile commented to the whole class that "[Teacher], you shouldn't come to school tomorrow because I'm going to . . . bring a gun and shoot up the school."  Teacher "knew [Juvenile] was kidding," but complied with his duty as a mandatory reporter and reported the comment to school administration.  School administration took no disciplinary action against Juvenile, but did notify police of his comment.  Police then investigated the matter, and the State petitioned the superior court to adjudicate Juvenile delinquent of threatening or intimidating.

**¶3**        The superior court held a contested adjudication hearing in April 2018.  There, the State presented one witness (Teacher) and offered no exhibits.  Juvenile did not present any witnesses or exhibits and did not testify.  The court ultimately adjudicated Juvenile delinquent, and he timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

---

[1]        We view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision.  *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

## ANALYSIS

**¶4** Juvenile asserts that the State's evidence is insufficient to prove that his comment was a "true threat." Considering the absence of probative facts in the record supporting the State's position, we agree.

**¶5** This court will not reweigh the evidence but will reverse for insufficient evidence "when there is a complete absence of probative facts to support a judgment or when a judgment is clearly contrary to any substantial evidence." *In re Kyle M.*, 200 Ariz. 447, 448-49, ¶ 6 (App. 2001) (citation omitted). To prove the offense of threatening or intimidating, the State must demonstrate beyond a reasonable doubt that a juvenile has threatened or intimidated by word or conduct:

> 1. To cause physical injury to another person or serious damage to the property of another; or

> 2. To cause, or in reckless disregard to causing, serious public inconvenience including, but not limited to, evacuation of a building, place of assembly or transportation facility.

A.R.S. § 13-1202(A)(1)-(2); Ariz. R.P. Juv. Ct. 29(C).

**¶6** This offense "does not require the State to prove [that] a . . . juvenile acted with 'wrongful intent,' [but] the State must demonstrate that the [juvenile] communicated a 'true threat.'" *Kyle M.*, 200 Ariz. at 448, ¶ 2. In interpreting the word "threat," this court has held that "the legislature intended only to criminalize *genuine* expressions of intent to either inflict bodily harm or seriously damage property of another." *Id.* at 451, ¶ 18. To demonstrate a true threat, the State must show:

> the [juvenile] made a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [a person].

*Id.* at ¶ 21 (citation omitted). Because this is an objective standard, the State need not prove that the listener subjectively feared or felt threatened by the communication for it to constitute a "true threat." *In re Ryan A.*, 202 Ariz. 19, 22-23, ¶¶ 9-14 (App. 2002).

¶7          Here, the only issue is whether the State provided sufficient evidence to prove beyond a reasonable doubt that Juvenile made a "true threat" when, in the context of a classroom discussion on recent school shootings, he apparently in jest stated to the teacher, "you shouldn't come to school tomorrow because I'm going to . . . bring a gun and shoot up the school." The record shows that Juvenile made the comment and that in doing so, he exercised very poor judgment. However, on this record, there is insufficient evidence to prove beyond a reasonable doubt that his comment constituted a "true threat."

¶8          A true threat requires "context" or "circumstances" that suggest to a reasonable person that the listener would interpret the speaker's comment as a "serious expression" of intent to harm. *Kyle M.*, 200 Ariz. at 451, ¶ 21. Cases that demonstrate this standard, such as *Kyle M.* and *Ryan A.*, are distinguishable here. In *Kyle M.*, the context and circumstances along with the juvenile's comment supported a finding that the juvenile intended a true threat. The juvenile told the victim, a classmate, that he was upset because his girlfriend broke up with him and then dated another individual. *Id.* at 448, ¶ 3. He told the victim that he was "going to bring a gun to school and shoot" his ex-girlfriend and her new boyfriend and characterized his plan as "a Columbine thing." *Id.* The next morning, the juvenile appeared nervous as he grabbed the victim by the wrist in front of two of her friends and stated that if "she told anyone what he had said, he would kill her." *Id.* at ¶ 4. All three classmates reported the incident to the school principal. *Id.* The victim was "extremely upset" by his words and cried as she reported the conversation. *Id.*

¶9          Likewise, the context and circumstances in *Ryan A.* also support a finding that the juvenile communicated a true threat. In that case, the juvenile and the victim were friends but had a falling out. *Ryan A.*, 202 Ariz. at 21, ¶ 4. Afterwards, the victim's family received several anonymous incidents of harassment; they believed the juvenile committed these incidents. *Id.* One day, the juvenile drove slowly past the victim's home and shouted out "a vulgar threat of death" addressed at him. *Id.* at ¶ 3. The victim's mother was upset after overhearing the threat and called the police. *Id.*

¶10          Unlike these cases, there is nothing in the context or circumstances surrounding Juvenile's comment reasonably suggesting that Juvenile's teacher or classmates would reasonably interpret his comment as a serious expression of an intent to harm. Juvenile's comment was on topic and part of a larger classroom discussion in which most students participated. Indeed, Teacher prompted the discussion about recent school

shootings as a "teachable moment[]" which would allow him "to reiterate our plan if something happens at our school." He testified that the conversation allowed him "a chance to observe [any] red flags" in students and allowed students to share their feelings about current events.

¶11 Juvenile's words, taken outside any context, express possible future harm. However, unlike in *Kyle M.* or *Ryan A.*, there is a complete absence of any context or circumstances beyond Juvenile's words to support a finding that his comment was a true threat or would be interpreted by his listeners as a serious expression of harm. For example, there is no evidence that Juvenile made the comment for any specific purpose or impression other than for attention or misguided humor. Teacher confirmed that although the classroom discussion was on a serious topic, it also contained some levity. There is no evidence that Juvenile directed his comment at a specific person or that he made it out of a harmful motivation, such as retaliation. The record also does not show that Juvenile harbored any ill will towards the school or the students therein, or that a poor relationship with any specific person triggered his comment. The State presented no evidence that Juvenile had any significant history of mental illness, disciplinary action, threats, or violence that may have given weight to his classroom comment. Finally, the record contained no evidence that recent events in his life occurred, such as a break-up, disagreement, suspension, or another personal issue, that may have driven his comment. The record instead indicates that he made one isolated, though ill-advised, comment within the topic of the classroom discussion.

¶12 Further, the State presented no evidence that Juvenile had access to a gun or had made any previous threats towards the school, the teachers, or the students. The State also presented no evidence that Juvenile appeared stressed or combative or that he displayed anger or threatening body language at any time before, during, or after making the comment. Nor did the State present evidence that he used an aggressive tone of voice while making the comment. The record shows no evidence that Juvenile took *any* corresponding actions with his comment.

¶13 Moreover, although the State is not required to prove that the receivers of a communication felt afraid or threatened by it, their objective reactions may factor into the context or circumstances relevant in assessing whether a reasonable person would foresee that Juvenile's statement would be interpreted as a true threat. *See Ryan A.*, 202 Ariz. at 23, ¶ 15 (noting that the juvenile's "tone was such that it frightened the family member who heard it" and "[t]he police were called, not as a ruse, but due to fear"). Here, there is no evidence that any of the twenty-one other students reported the

incident to school administration or other authorities, sought counseling, or otherwise took any actions that indicate Juvenile's comment effected a serious expression of an intent to harm. As a mandatory reporter, Teacher informed school administration of Juvenile's comment. However, Teacher was not threatened by the comment, never thought Juvenile was serious, and told the investigating officer that he "knew [Juvenile] was kidding." And although the students overheard Juvenile's comment, Teacher testified that they were upset and "ooh'd and aah'd" in reaction mainly "because they knew . . . how this was going to develop was probably going to be unpleasant" for Juvenile. Despite this, Teacher did not observe any reactions in the students that he interpreted as taking Juvenile's comment as a serious threat.

¶14        Nor did the State present any evidence that Juvenile's classroom or school was evacuated, placed on high alert, or otherwise subjected to a serious public inconvenience due to his comment. *See In re J.U.*, 241 Ariz. 156, 158, ¶ 1 (App. 2016) (adjudicating a juvenile delinquent who threatened two schools with a "terrorist attack," causing evacuation and closure). Finally, there is no evidence that the school administration took any disciplinary action against Juvenile beyond reporting his comment to police.[2] Overall, there is a complete absence of probative facts to support the State's interpretation that Juvenile's comment constituted a true threat.

¶15        School shootings are a contemporary and serious concern, and Juvenile's comment was quite thoughtless. However, on this record, it did not rise to the level of a delinquent act. The State argues on appeal that because Juvenile made his comment during a classroom conversation of "very real and recent tragedies," the comment itself is enough that a student or parent "could feel threatened by" Juvenile's statement. This argument misses the definition of a true threat which requires that "a reasonable person *would* foresee that the statement *would* be interpreted" by the listener "as a *serious* expression of" an intention to harm or kill. *Kyle M.*, 200 Ariz. at 451, ¶ 21 (emphasis added). The State's argument instead suggests that any insensitive, ill-timed, or outrageous comment made in front of colleagues or peers could result in a delinquent or criminal record for the speaker—certainly not the purpose behind Arizona's criminal statutes. *See*

---

[2]        Even at Juvenile's disposition hearing, his counsel pointed out that "the principal at the high school didn't fill out any kind of victim information . . . we can infer from that that he doesn't see [Juvenile] as a problem child or he would be asking the Court for some pretty serious consequences."

*Virginia v. Black*, 538 U.S. 343, 359-60 (2003) ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."); *Watts v. United States*, 394 U.S. 705, 707-08 (1969) (criminalizing "pure speech" under a statute is unconstitutional); *Kyle M.*, 200 Ariz. at 451, ¶ 22 (stating the "true threat" standard "sufficiently narrows the words or conduct prohibited without infringing upon the privileges of free speech").

**¶16**        Thus, in the context of the facts presented here, the State failed to present sufficient evidence proving beyond a reasonable doubt that Juvenile's comment was a true threat.

## CONCLUSION

**¶17**        For the foregoing reasons, we reverse the superior court's order adjudicating Juvenile delinquent.



AMY M. WOOD • Clerk of the Court
FILED:  AA