NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CASEY H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.H., *Appellees*.

No. 1 CA-JV 21-0339
FILED 6-2-2022

Appeal from the Superior Court in Maricopa County
No.  JD 533071
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

**¶1** Casey H. ("Father") appeals the juvenile court's order terminating his parental rights to his daughter, M.H., born in 2019. He argues the court erred in finding termination was in M.H.'s best interests. Because reasonable evidence supports the court's order, we affirm.

## BACKGROUND

**¶2** Two days after M.H. was born, DCS received a report that Esmeralda K. ("Mother") had a history of daily methamphetamine use and untreated mental illness. When DCS interviewed Father, he disclosed having severe mental illness and was not sure he could care for M.H. Due to these issues, DCS removed M.H. from the parents' care and placed her in a licensed foster home.

**¶3** In January 2020, DCS filed a dependency petition as to both parents. DCS alleged that Father was unable to parent due to mental illness and neglect, and that paternity was already established because Father's name was listed on M.H.'s birth certificate. Neither parent contested the allegations and the court adjudicated M.H. dependent, with a case plan of family reunification.

**¶4** At that time, Father was already receiving mental health treatment through Partners in Recovery ("Partners"). Father agreed to participate in additional reunification services, including parent aide, supervised visitation, and substance abuse testing. In April 2020, after completing a psychological evaluation, the evaluator diagnosed Father with "Schizoaffective Disorder" and "Bipolar type Unspecified." The evaluator recommended that Father participate in individual psychotherapy and parenting classes. In May 2020, at the request of Father's counsel, a guardian ad litem was appointed for Father.

**¶5** In November 2020, DCS stopped receiving updates on Father's participation in services. Father later informed DCS that he had stopped receiving mental health services from Partners but had scheduled

an intake with a new provider. Father also requested that DCS "not be involved with his mental health services."

¶6 In February 2021, the juvenile court ordered DCS to provide Father weekly supervised visitation with M.H. DCS documented some progress, noting in a March 2021 report that Father was prepared for visits, had found employment, and had made changes to his house to ensure M.H.'s safety. But DCS remained concerned about Father's ability to care for M.H. Despite a prior domestic dispute between Father and Mother, Father intended for Mother to move back into the home. DCS was also concerned that Father's mental illness remained unmanaged, given that he had not complied with treatment recommendations and discontinued his medication. DCS noted the same concerns in its May 2021 report.

¶7 In June 2021, Father refused to participate in further services or visitation until he received a paternity test. About a week later, Father made a series of calls to DCS reporting "all sorts of scenarios about his past suicidal attempt, how [Mother] wants to harm him, how he no longer can keep [M.H.] safe and [M.H.] is not safe with [Mother]." In August 2021, the juvenile court ordered DCS to provide Father a paternity test and changed the case plan to severance and adoption. The following month, DCS moved to terminate Father's and Mother's parental rights. As to Father, DCS sought severance under abandonment (A.R.S. § 8-533(B)(1)), as well as nine- and fifteen-months' out-of-home placement (A.R.S. § 8-533(B)(8)(b),(c)).

¶8 Father did not appear at the initial severance hearing. After discovering Father had been admitted into an impatient facility the day before, the court continued the matter for a pretrial conference in October 2021. Father did not appear at the pretrial conference, and no explanation for his absence was provided. Over his attorney's and guardian ad litem's objections, the court allowed DCS to present its case to terminate Father's parental rights. The DCS case manager testified that Father could not provide for M.H.'s needs, had no contact with M.H. since June 2021, and stopped participating in reunification services. She also reported that M.H. was adoptable and in an adoptive placement meeting all of her needs. The case manager then opined that termination would benefit M.H. by furthering the adoption plan and providing stability, and that M.H. would be at risk of harm if returned to Father's care.

¶9 At the conclusion of the hearing, the juvenile court found that DCS proved each of the statutory grounds alleged in the motion for termination, and that terminating Father's parental rights was in M.H.'s best interests. After DCS submitted proposed findings of facts and

conclusions of law, the court issued a signed order terminating Father's parental rights.   Meanwhile, the court continued the termination hearing as to Mother so she could receive an updated psychological evaluation.[1]   Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

**¶10**      To terminate parental rights, the juvenile court must find at least one statutory ground by clear and convincing evidence, and that termination is in the child's best interests by a preponderance of the evidence.  *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 4 (App. 2017).  We will affirm the court's order unless there is an abuse of discretion or the court's findings of fact were clearly erroneous.  *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).  The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts."  *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

**¶11**      Father's sole argument on appeal is that the court erred in finding that termination of his parental rights was in M.H.'s best interests.  Termination is in a child's best interests if "the totality of the circumstances" establishes that the child will either benefit from the termination or be harmed if it is denied.  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, 150 ¶¶ 1, 13 (2018).  "At the best-interests stage of the analysis, 'we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence.'"  *Id*. at 150, ¶ 12 (citation omitted).

**¶12**      The juvenile court found that termination was in M.H.'s best interests "because it would further the plan of adoption, which would provide the child with permanency and stability."  The court also found that M.H. was adoptable, was residing in an adoptive placement meeting all her needs, and that "another adoptive placement could be located

---

[1]      Mother is not a party to this appeal.  As far as the record before us reveals, DCS's motion for termination of her parental rights has not yet been resolved.

should the current placement be unable to adopt."[2] Father contends the court erred in finding M.H.'s potential adoptability supported termination because Mother's rights were not terminated.

**¶13** "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016); *see also Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370, ¶ 22 (App. 2018) ("Thus, while courts have often referred to a child's 'adoptability' or her 'adoptive placement' in determining best interests, we conclude those findings, to be meaningful, must reflect a finding that adoption is not only possible, but likely.").

**¶14** As Father notes, so long as Mother continues to have parental rights to M.H., adoption cannot occur until Mother either consents to the adoption or her parental rights are terminated. *See* A.R.S. § 8-106(A), (B)(2). And because Mother is contesting the ongoing termination proceedings, M.H. would not become immediately eligible for adoption by the termination of Father's parental rights. According to Father, given that M.H.'s potential adoption is contingent upon uncertain future events, the court could not find M.H.'s adoption to be likely, and any potential benefit based on adoptability is mere speculation. *See Titus S.*, 244 Ariz. at 373–74, ¶ 34 (explaining that the court's speculative hope that termination would benefit the child sometime in the future is insufficient to support a best-interests finding). Thus, Father argues the court erred in finding that the termination of his parental rights would lead to permanency and stability for M.H.

**¶15** Father, however, has waived his argument concerning best interests because he failed to raise any challenge to the juvenile court's findings before that court in the first instance, and more specifically, he did not assert that adoptability was merely speculative given that Mother's parental rights have not been terminated. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 177, 178–79, ¶¶ 10, 16 (App. 2014) (arguments not raised in the juvenile court are generally waived on appeal); *In re Kyle M.*, 200 Ariz. 447, 448, ¶ 2 (App. 2001) (even constitutional arguments can be

---

[2]     Given Father's failure to appear at the pretrial conference, he "is deemed to have admitted the allegations" in the motion for termination. *See* Ariz. R. Juv. Ct. 64(C). Those allegations track the juvenile court's findings.

waived if not presented to the juvenile court).  Waiver aside, we are not persuaded by Father's broad assertions.  This is not a situation where DCS has alleged that termination is justified against one parent only.  Instead, the court had already adjudicated M.H. dependent as to Mother and set the case plan for severance and adoption.  And the record shows Mother has untreated mental illness, persistent substance abuse issues, and inconsistent compliance with reunification services.  On the other hand, the DCS case manager gave uncontroverted testimony that M.H. was adoptable and currently in an adoptive placement meeting all of her needs.  Although M.H.'s adoption would not be immediate, on this record the court did not err by implicitly concluding that M.H.'s adoption was both legally possible and likely.

**¶16**        Moreover, Father's reliance on *Titus S.* is misplaced.  In that case, we held that the juvenile court erred in finding the children's adoption was likely, given that they were old enough where their consent was required, and the children had adamantly refused to provide their consent.  *Titus S.*, 244 Ariz. at 371, ¶ 24.  We explained that the court's best interests' findings could not rest on the speculative hope that the children would one day change their minds and consent to adoption.  *See id.* at 370–71, ¶ 22.  Here, the record reflects more than mere speculation that M.H. would be adopted, given Mother's continued struggles with reunification and M.H.'s success at her adoptive placement.  DCS is not required to present evidence guaranteeing that termination will lead to the child's adoption.  *See id.* at ¶ 23 ("[T]he benefit of a prospective adoption, for purposes of a best-interests inquiry, cannot depend on a 'guarantee' that the adoption will occur, as prospective parents, as well as children, might have a change of heart.").

**¶17**        Father also asserts the juvenile court failed to properly consider the totality of the circumstances.  In particular, he references his participation in services between January 2020 and June 2021, and that he attended six of seven court hearings during the same time frame.  Father also points out that he was prepared for his supervised visits, had found employment, made his home safe, wanted his daughter back, and had asked for more visitation with M.H. in March 2021.

**¶18**        However, Father is essentially asking this court to reweigh the evidence, which we will not do.  *See Oscar O.*, 209 Ariz. at 334, ¶ 4.  And even taking Father's points into consideration, reasonable evidence supports the termination order.  *See id.*  Although Father initially attended the majority of the report and review hearings, he was absent from the pretrial severance conference without cause.  Also, Father's participation in

reunification services was inconsistent, and he was unable to demonstrate that he could manage his mental health or keep M.H. safe from Mother. Then in June 2021, Father discontinued all services, including visitation. And as already explained, the juvenile court reasonably found termination would provide M.H. with permanency and stability. *Alma S.*, 245 Ariz. at 150, ¶ 12 ("The 'child's interest in stability and security' must be the court's primary concern." (citation omitted)). Thus, we affirm the court's determination that termination of Father's parental rights was in M.H.'s best interests.

## CONCLUSION

**¶19**        We affirm the juvenile court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:    AA