39 P.3d 543

### In re RYAN A.

### No. 1 CA–JV 01–0053.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 12, 2002.

Janet Napolitano, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Richard M. Romley, Maricopa County Attorney By Arthur Hazelton, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Jeffrey M. Zurbriggen, P.C. By Jeff Zurbriggen, Tempe, Attorney for Appellant.

## OPINION

BARKER, Judge.

¶ 1 We consider three issues for the first time: (1) whether a juvenile can be guilty of threatening or intimidating, in violation of Arizona Revised Statutes ("A.R.S.") § 13–1202(A)(1) (2001), when the intended victim was not in fact scared and did not feel threatened; (2) whether both parents of a minor victim can receive restitution for the same event; and (3) whether restitution under A.R.S. § 8–344 (Supp.2001) can include economic losses such as lost annual leave or vacation time.[1]

¶ 2 For the reasons set forth below, we affirm the trial court's adjudication and restitution award.

### Factual and Procedural Background

¶ 3 On March 24, 2000 around 9:00 p.m., a Blazer or Jeep-like vehicle passed slowly in front of the home of Shelley D. and her son Brandon. Shelley looked out the window and heard a male voice scream out a vulgar threat of death. Brandon was in his room. He did not hear the threat, but his mother

told him of it. Although he was upset by his mother's reaction to the threat, Brandon was not personally scared nor did he feel threatened. His mother called the police.

¶ 4 Shelley, Brandon, and Brandon's father, John, had been victims of several anonymous incidents of harassment since the fall of 1999. The family believed that a former friend of Brandon's, Ryan A., was responsible for both the prior incidents and the threat made outside their home on March 24. The police investigated the incident. They interviewed Ryan and several of Ryan's friends. One of Ryan's friends admitted to the police that he was riding in a car with Ryan, in front of Brandon's home, when Ryan yelled out a threat. The state subsequently brought a petition against Ryan for threatening or intimidating in violation of A.R.S. § 13–1202(A)(1).

¶ 5 The trial court found Ryan to be in violation of § 13–1202(A)(1) for the verbal threat of March 24, 2000. Ryan was placed on probation, with terms including community service, anger management, and restitution. The court also determined that Shelley and John were entitled to restitution for three hours missed from their employment in order to attend the disposition hearing. The total restitution award was $336 for both parents.

¶ 6 Ryan appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21 (1992) and 8–235(A) (Supp.2000).

### Discussion

**1. Threatening or Intimidating.**

¶ 7 The juvenile contends that because the victim was not in fact scared or threatened by Ryan's statement, he could not be guilty of threatening or intimidating as a matter of law. We review questions of law *de novo. Brink Elec. Constr. Co. v. Arizona Dep't of Revenue,* 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995). The juvenile also asserts that there is an insufficient factual basis to support the adjudication of the trial court. We review the facts to determine whether

---

1. Appellant has raised other issues as well. Rather than provide a separate memorandum decision, we address the issues in footnotes at the appropriate location in the text of this opinion.

they substantially support the judgment. *State v. Sanders*, 118 Ariz. 192, 196, 575 P.2d 822, 826 (App.1978).

¶ 8 The 1994 version of § 13–1202(A)(1), applicable both now and at the time of this incident, provides as follows:

A person commits threatening or intimidating if such person threatens or intimidates by word or conduct:

To cause physical injury to another person or serious damage to the property of another.

A.R.S. § 13–1202(A)(1). Earlier versions of this statute provided that the statement or conduct be spoken or done with the "intent to terrify." 1978 Ariz. Sess. Laws, ch. 201, § 128.[2] The 1994 version applicable here deletes that passage. In view of the lack of any explicit intent requirement on the part of an alleged perpetrator, this court recently held that § 13–1202(A)(1) applied only to a "true threat." *In re Kyle M.*, 200 Ariz. 447, 451, ¶ 19, 27 P.3d 804, 808 (App.2001). Grafting the "true threat" requirement into this statute also resolved constitutional concerns based on the first amendment right to free speech.[3] *Id.*

¶ 9 The key issue in *Kyle M.* was whether the state must prove that the perpetrator of a threat had any "wrongful intent." 200 Ariz. at 447, ¶ 1, 27 P.3d at 804. The court found that the state need not prove "wrongful intent" but must prove that the perpetrator made a "true threat." *Id.* at 450, ¶ 15, 27 P.3d at 807. Thus, while *Kyle M.* dealt with the state of mind of the alleged perpetrator, we are faced here with the other side of the issue: Must there be a showing of the state of mind of the victim? In other words, does a "true threat" require that the *victim* in fact be scared or feel threatened? *Kyle M.* and other authorities persuade us that the answer to these questions is "no."

¶ 10 Turning again to *Kyle M.*, we note that the victim in that case was extremely upset as a result of the threats. 200 Ariz. at 448, ¶ 4, 27 P.3d at 805. Accordingly, whether the victim must in fact be scared or feel threatened to constitute a "true threat" was not squarely at issue. The application of the test for a "true threat" announced in that case, however, makes it clear that a subjective state of fear on the part of the intended victim is not required to prove this offense.

¶ 11 *Kyle M.* sets forth the following test for determining whether statements constitute a "true threat:"

[I]n order for the government to establish a "true threat" it must demonstrate that the defendant made a statement in a context or under such circumstances wherein *a reasonable person would foresee* that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [a person].

200 Ariz. at 451, ¶ 21, 27 P.3d at 808 (emphasis added). In other words, would *a reasonable person* foresee that the statement would be understood by those who heard the statement as a genuine threat to inflict harm. The test is clearly an objective one. *Id.* Referencing *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), the court stated that "[c]ases decided since *Watts* have established an objective test for establishing whether a defendant has uttered a 'true threat.' " *Kyle M.*, 200 Ariz. at 451, ¶ 21, 27 P.3d at 808. It is axiomatic that an objective test does not require a subjective analysis of the belief of the particular person to whom the threat is made.

¶ 12 While we are aware of no Arizona decisions that find a threat where the victim

---

**2.** In his brief, Ryan also argues that a juvenile must specifically intend the victim to be "terrified." Ryan makes this argument based on A.R.S. § 13–1202 before its amendment in 1994, and *State v. Morgan*, 128 Ariz. 362, 625 P.2d 951 (App.1981), which interprets the pre–1994 version of the statute.

Prior to the 1994 amendment, A.R.S. § 13–1202(A) included the following: "if such person *with the intent to terrify* threatens or intimi-

dates...." (Emphasis added.) The 1994 amendment deleted "with the intent to terrify." Thus, the juvenile's argument on this score is not well-taken as it is based on statutory language that has since been repealed and earlier cases that interpreted this language before it was deleted.

**3.** A more complete chronology of the statute, not necessary here, is set forth in *Kyle M.*, 200 Ariz. at 449–50, ¶¶ 8–15, 27 P.3d at 806–07.

was not in fact scared or felt threatened, we have held that a threat need not be heard by a victim to result in criminal liability. *Matter of Juvenile Action No. 55*, 123 Ariz. 434, 435, 600 P.2d 47, 48 (App.1979). In that matter, the victim did not directly hear the threat. Rather, it was relayed to her:

> Although the girl in the wheelchair didn't hear the remark as she was talking to a friend, the other girls told her about it and that the remark was directed at her. All the girls were quite upset and the girl in the wheelchair was scared.

123 Ariz. at 435, 600 P.2d at 48. The victim was in fact scared in that case. *Id.* That evidence was viewed as circumstantial evidence of the defendant's "intent to terrify," *id.*, which is not a necessary element of the present offense. Thus, our prior holdings, while not reaching the issue, certainly do not require that evidence of fear on the part of the victim be established.

¶ 13 Additionally, the plain wording of § 13–1202(A)(1) does not require that the victim in fact feel threatened. That statute states that a person is guilty of threatening or intimidating if such person "threatens or intimidates by word or conduct to cause physical injury to another person." A.R.S. § 13–1202(A)(1). In interpreting the phrase "threatens or intimidates," we give the term "or" its typical disjunctive meaning. *Rutledge v. Arizona Bd. of Regents*, 147 Ariz. 534, 556–57, 711 P.2d 1207, 1229–30 (App. 1985) ("The word 'or' is defined as '[a] disjunctive particle used to express an *alternative or to give a choice* of one among two or more things.' " quoting Blacks Law Dictionary 1246 (rev. 4th ed.1968) (italics in original)). Whether a person can "intimidate" without creating subjective fear in a victim is not necessary for us to decide. A person, however, can certainly "threaten" without causing subjective fear. The "true threat" doctrine from *Kyle M.* then comes into play to determine whether it is the type of threat that will subject its maker to criminal sanctions.

¶ 14 Thus, we do not find that subjective fear on the part of the victim is necessary under the "true threat" doctrine so long as the requirements for a "true threat" are otherwise established. The present case is a perfect example.

¶ 15 In this case an expletive-laced threat of death was hurled toward a family home from a passing car. The threat specifically included the name of an individual residing in the home.[4] There had been a history of threats in the past. The tone was such that it frightened the family member who heard it. The police were called, not as a ruse, but due to fear. A reasonable person could certainly conclude that the statement represented a "true threat" despite the fact that the intended victim did not express fear when the threat was relayed to him.

¶ 16 We accordingly find that the trial judge in this case correctly applied the law. She likewise did not abuse her discretion in adjudicating the juvenile delinquent of threatening or intimidating. There were sufficient facts to support that determination.

## 2. Restitution.

¶ 17 Ryan also argues that the trial court erred in awarding restitution to the victim's parents. Most of the restitution issues raised can be resolved summarily. However, as noted earlier, certain issues are either of first impression or require extension of prior holdings. Some discussion of the fundamental principles underlying restitution is helpful.

### A. *Fundamental principles as to restitution.*

¶ 18 The Victim's Bill of Rights to the Arizona Constitution provides as follows:

> To preserve and protect victims' rights to justice and due process, *a victim of crime has a right:*
>
> To *receive prompt restitution* from the person or persons convicted of the criminal conduct that caused the victim's loss or injury.

---

4. The exact wording of the threat was "I'm going to fucking kill you," followed by a reference to the victim's last name.

Ariz. Const. art. 2, § 2.1(A)(8) (emphasis added). The legislature has likewise provided:

> If a juvenile is adjudicated delinquent, the court ... *shall order the juvenile to make full or partial restitution to the victim of the offense* for which the juvenile was adjudicated delinquent or to the estate of the victim if the victim has died.

A.R.S. § 8–344(A) (emphasis added). Thus, the obligation for a juvenile offender to pay full or partial restitution to a victim is mandatory.

¶ 19 This court has held that the rights of restitution applicable to a minor victim also apply to the minor's parents. *In re* Erika V., 194 Ariz. 399, 401, ¶¶ 7–8, 983 P.2d 768, 770 (App.1999). The rationale underlying *Erika V.* was the minor's entitlement to the protection and aid of her parents, both to assist in providing necessary services such as medical care and to accompany the juvenile to court proceedings. *Id.* As we stated in *Erika* V.:

> Indeed, [the minor victim's] parents are legally required to provide her with necessary medical treatment, which includes the parental responsibility of taking her to appointments to treat her injuries from the assault. Additionally, [the minor victim] had the right to be present at the juvenile court hearings, and, because she is a minor, her parents could also exercise her rights and attend those hearings with her.

194 Ariz. at 401, ¶ 7, 983 P.2d at 770 (citation omitted). Based on those rights and responsibilities, we held that a minor victim's parents are "therefore entitled to restitution for their lost wages incurred while taking [the minor victim] to medical appointments and juvenile court hearings occasioned by" the criminal conduct. 194 Ariz. at 401, ¶ 8, 983 P.2d at 770; *see also State v. Uriarte*, 194 Ariz. 275, 278, ¶ 14, 981 P.2d 575, 578 (App. 1998) (stating that the parent and the minor victim have a right "to be present at ... all criminal proceedings where the defendant has the right to be present" (quoting Ariz. Const. art. 2, § 2.1(A)(3))).

¶ 20 Furthermore, the trial court has discretion to set the restitution amount according to the facts of the case in order to make the victim whole. A.R.S. § 13–804; *State v. Ellis*, 172 Ariz. 549, 551, 838 P.2d 1310, 1312 (App.1992). An appropriate restitution award consists of monies for economic losses that flow directly from or are the direct result of the crime committed. *State v. Morris*, 173 Ariz. 14, 17, 839 P.2d 434, 437 (App.1992). This is contrasted with consequential damages that do not flow directly from the criminal activity. *State v. Lindsley*, 191 Ariz. 195, 198, 953 P.2d 1248, 1251 (App. 1997). The economic loss may be based on injuries caused as a result of the criminal conduct. *Id.* The restitution award, however, may also be based on other economic losses, such as losses due to attendance at court proceedings, whether voluntary or mandatory. *Id.* On appeal, this court will uphold the restitution award if it bears a reasonable relationship to the victim's loss. *State v. Wilson*, 185 Ariz. 254, 260, 914 P.2d 1346, 1352 (App.1995); *State v. Howard*, 168 Ariz. 458, 460, 815 P.2d 5, 7 (App.1991).

¶ 21 It is against this backdrop of rights and responsibilities that we analyze the two restitution issues before us.

### B. *Both parents of a minor victim may be awarded restitution for attending the same court proceeding.*

¶ 22 In this case, both of Brandon's parents were awarded restitution for lost wages incurred for attending the disposition hearing with Brandon. Based on the foregoing principles, it is clear that one parent would be entitled to restitution for voluntary attendance at a court proceeding with a minor victim. *Erika V.*, 194 Ariz. at 401, ¶ 7, 983 P.2d at 770. The issue is whether both may receive restitution for attending the same court proceeding.

¶ 23 *Erika V.* speaks of "parents" in the plural receiving restitution, but it is unclear whether this pertains to both parents receiving restitution for the same event. Additionally, the language of the statute is phrased in the singular: "If the victim is a minor ... the victim's *parent* ... may exercise all of the victim's rights on behalf of the victim." A.R.S. § 13–4403(C) (emphasis added).

¶ 24 The policy underlying the award of restitution to a parent when attending court proceedings is that the minor victim is enti-

tled to the support of his or her parent at a time of potentially significant stress and concern for the child. We see no reason why this policy should be narrowly construed. A child should not be precluded from having the support of *both* parents if he or she is fortunate enough to have it. Rather, the policy underlying the statute promotes full parental support of *both* parents at a time when their child is involved in legal proceedings. *Cf. Moran v. Moran,* 188 Ariz. 139, 144, 933 P.2d 1207, 1212 (App.1996) ("The state has an interest in promoting healthy family relationships that enable children to become well-adjusted, responsible adults.").

¶ 25 We likewise do not find the reference to "parent" in the singular to be limiting, but rather to provide that one parent, as opposed to both, may exercise the minor victim's rights if the circumstances are appropriate. "Words in the singular number include the plural, and words in the plural include the singular." A.R.S. § 1–214(B) (1995). Thus, we find the award of restitution to both parents for the same event to be appropriate. There was no abuse of discretion.

### C. *Restitution may extend to economic losses such as lost vacation time or annual leave.*

¶ 26 Ryan also argues that the parents sustained no actual loss. He argues that A.R.S. § 8–344(B) limits restitution to "damage for lost wages." *Id.* Accordingly, he argues, restitution was improperly awarded.

¶ 27 In considering the application of A.R.S. § 8–344, we construe the statute to give it the purpose that the legislature intends. *Zamora v. Reinstein,* 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) ("When construing statutes, our goal is 'to fulfill the intent of the legislature that wrote it.' " (quoting *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993))). As discussed previously, the purpose of restitution statutes generally is to make the victim whole. *State v. Howard,* 163 Ariz. 47, 51, 785 P.2d 1235, 1239 (App.1989). Likewise, restitution was not intended to provide a "windfall" for the victim. *State v. Iniguez,* 169 Ariz. 533, 537, 821 P.2d 194, 198 (App.1991).

¶ 28 As to the mother, Ryan argues that her loss is non-monetary because she only missed appointments with clients that she rescheduled. Therefore, she did not lose wages because her clients could be seen at a later time. The mother, Shelly, testified that she did not receive any compensation for the three hours that she attended the disposition hearing and that, but for the hearing, she would have been compensated in the amount of $300. Thus, Ryan's argument that there was no economic loss is not applicable. The trial judge was within her discretion in awarding restitution to Shelly for this amount.

¶ 29 As to the father, John, the record shows he received "annual leave pay" from his employer in the amount of $66 for the three hours he attended the disposition hearing. In receiving this payment from his "annual leave pay," John gave up three hours of annual leave time that would otherwise have been available to him had he not attended the disposition. Although the loss was "time" and not money, it was nonetheless real and a direct result of court proceedings caused by the juvenile. The father had three less hours of annual leave available to him. To be returned to the status quo, he would need reimbursement ($66) for the lost annual leave time. There was no windfall. The only remaining issue is whether the reference to "lost wages" in § 8–344(B) precludes the father's recovery of annual leave pay as a matter of law. We determine it does not.

¶ 30 The reference to "lost wages" in § 8–344(B) derives from the broader grant in § 8–344(A). That section references "restitution" and does not further define the term. Subsection (B) then provides what the court "may consider" in determining an award. In pertinent part it states:

> The court *may consider* a verified statement from the victim concerning *damages for lost wages,* reasonable damages for injury to or loss of property and actual expenses of medical treatment for personal injury, excluding pain and suffering.

A.R.S. § 8–344(B) (emphasis added).

¶ 31 Here we need not decide whether the reference to "may consider" is (a) a

limitation that allows the trial court to order restitution only for the items identified, or (b) simply a list of examples of items upon which restitution may or may not be based. We do not reach this issue because we determine that the father's loss falls within the scope of "lost wages." We decline to construe the term "lost wages" so narrowly as to preclude restitution for the loss of indirect employment benefits, such as annual leave or vacation time as was the case here. The loss of such benefits is a real economic loss tied to wages earned. Furthermore, the loss resulted directly from the proceedings made necessary by Ryan's criminal conduct. *Lindsley,* 191 Ariz. at 198–199, 953 P.2d at 1251–1252.

¶ 32 Thus, restitution for the lost annual leave is permitted by § 8–344(B). As it was necessary here to make the father whole, there was no abuse of discretion by the trial judge in entering such an award.

### *Conclusion*

¶ 33 For the reasons set forth above, we hold that A.R.S. § 13–1202(A)(1), threatening or intimidating, does not require the state to show that the victim of the threat was scared or felt threatened so long as the elements of a "true threat" are established.

¶ 34 We also hold that the Victim's Bill of Rights and related legislation permit both parents of a minor victim to receive restitution for attending the same proceeding. The restitution award may be based on economic losses such as loss of vacation time or annual leave pay.

¶ 35 The proceedings below are affirmed.

CONCURRING: JON W. THOMPSON, Presiding Judge, and JEFFERSON L. LANKFORD, Judge.