NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE KALIB A.

No. 1 CA-JV 17-0429
FILED 2-27-2018

Appeal from the Superior Court in Yavapai County
No. P1300JV201700054
The Honorable Anna C. Young, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Yavapai County Attorney's Office, Prescott
By Amy C. Drew
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Patricia A. Orozco[1] joined.

---

[1]     The Honorable Patricia A. Orozco, Retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

**B R O W N**, Judge:

¶1         Kalib A. appeals the juvenile court's order adjudicating him delinquent for arson of a structure or property, reckless burning, and criminal damage, and the resulting disposition.  He argues there was insufficient evidence to find him delinquent or to support the court's restitution order.  We affirm the delinquency adjudication but vacate the restitution award and remand for reconsideration of the award.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2         On January 1, 2017, Kalib (age 12 at the time) and several juveniles were "riding around" on their bikes and scooters at a park in Prescott Valley when Kalib and at least one other boy, Jackson, decided to retrieve Christmas trees from a nearby dumpster.  They decided to drag one of the trees into the park restroom and place it in a toilet, believing it was "funny."  Eventually, either Kalib, Jackson, or both lit the tree on fire, causing smoke to billow from the restroom and many of the juveniles to scatter in various directions.

¶3         One of the juveniles ran up to Officer Hyde and his training officer, who were sitting in their car near the park, and told them the restroom was on fire.  The officers drove through the north parking lot, ran to the restroom, which was "billowing black smoke," and unsuccessfully attempted to put out the fire with a fire extinguisher.  After firefighters extinguished the fire, the officers talked to a man nearby, who gave them "descriptions of the individuals there as far as a blue and black jacket, kids on scooters, and who he saw on bikes."  Officer Cozens, provided with the witness descriptions, searched for juveniles around the area and spotted Kalib, who was riding away from the park on a bike.  When Cozens stopped him, Kalib explained that "he was there at the scene when the fire was started" but that "another juvenile by the name of Jackson was the one that started the fire."  The officers contacted Kalib's father, detained Kalib, read him his juvenile *Miranda* rights, and interviewed him.  With his father present, Kalib admitted his involvement in the fire, explaining he and Jackson pulled the Christmas tree into the bathroom, but again denied lighting the tree on fire.

¶4         The State filed a delinquency petition alleging Kalib committed the offenses of (1) arson of a structure or property, a class 4 felony; (2) reckless burning, a class 1 misdemeanor; and (3) criminal damage, a class 5 felony.  The juvenile court held a contested adjudication hearing on these allegations, and after photographs of the damaged

bathroom were presented and seven witnesses testified, including Kalib, the court adjudicated him delinquent, finding the State met its burden of proving beyond a reasonable doubt that Kalib committed the alleged offenses and that he automatically violated his probation. The court then held a disposition hearing, ordering Kalib to pay $7,088.48 in restitution in full by August 31, 2019. This timely appeal followed.

## DISCUSSION

¶5　　　　When reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence but view it in the light most favorable to upholding the adjudication. *In re Kyle M.*, 200 Ariz. 447, 448-49, ¶ 6 (App. 2001). We will reverse for insufficient evidence only when there is a "complete absence of probative facts to support a judgment or when a judgment is clearly contrary to any substantial evidence." *Id.*

¶6　　　　Kalib argues there was insufficient evidence for the juvenile court to find him responsible beyond a reasonable doubt of the alleged offenses. Specifically, Kalib contends there was insufficient evidence to establish each offense because (1) "[t]he only evidence at trial that Kalib caused the fire or had any involvement in starting the fire was" Jackson's testimony; (2) the other two juvenile witnesses either believed Jackson started the fire or did not know who started it; and (3) Kalib, consistent with what he told officers, testified that Jackson started the fire. Kalib also argues there was insufficient evidence to establish that the damage to the park restroom was more than $2,000.

¶7　　　　To be held responsible for reckless burning, a person must "recklessly caus[e] a fire . . . which results in damage to" a structure, and for arson of a structure or property, a person must "knowingly and unlawfully damag[e] a structure or property by knowingly causing a fire." Ariz. Rev. Stat. ("A.R.S.") §§ 13-1702(A), -1703(A). Criminal damage requires that a person "recklessly defac[e] or damag[e]" another's property, and is a class 5 felony if the amount of property damage is $2,000 or more and less than $10,000. *Id.* § 13-1602(A)(1), (B)(3). A person can be held responsible for these offenses as an accomplice, which is described as "one who knowingly and with criminal intent participates, associates, or concurs with another in the commission of a crime." *State v. McNair*, 141 Ariz. 475,

3

480 (1984) (internal quotation and citation omitted); *see also* A.R.S. §§ 13-301 to -303.[2]

¶8        K.S., one of the juveniles at the park, testified that Kalib and Jackson removed a Christmas tree from a nearby dumpster, and that Kalib, when "Jackson was with him," moved the tree to the restroom.  Both had a lighter and were "passing it back and forth," and were joking about lighting the tree on fire.  Although unsure of who exactly started the fire, K.S. saw Jackson trying to light the tree on fire and Kalib near the sink when he walked by the restroom entrance; he also saw both of them leave once "smoke started coming out."

¶9        S.S., a friend of K.S. who was also at the park, testified that both Kalib and Jackson moved a Christmas tree into the restroom.  Kalib had a black lighter and Jackson had a green lighter, and both ran out of the restroom "together" when a "bunch of smoke" was in the restroom.

¶10        Jackson, who was also at the park, testified that he, S.S., and Kalib moved Christmas trees to the "ramada," a structure near the bathroom, for jumping and playing "flat scoot and stuff like that."  He and Kalib then decided to move a tree into the restroom—Kalib pulled the tree inside and Jackson placed it in the toilet.  After about an hour, Jackson, as he was bringing a lighter to Kalib, but "before [he] could really say anything," saw Kalib light the tree on fire.

¶11        Officer Hyde testified that he was "made aware that [the damage] was over $5,000."  Using 11 photographs, Hyde explained the extent of the damage to the restroom: (1) smoke damage to the restroom's exterior and the male and female restrooms; (2) "physical damage" to a door's locking mechanism (firefighters "sledgehammered" the door so they could access and turn off the electrical); (3) "bubbling" paint on the walls and ceiling; (4)  drywall damage in the men's restroom (firefighters tore down the drywall to access the "attic space" because the fire "burned through the drywall"); (5) "major burn marks in the stall behind the urinal" in the men's restroom; (6) "major fire damage and boiling of the actual partition" of the stall; and (7) possible "electrical damage."  He also testified he saw "branches and small tree debris" in the men's restroom stall where the fire originated.

---

2        The State's delinquency petition cited the accomplice liability statutes, and during closing arguments, the State and Kalib's attorney each referred to Kalib's liability as an accomplice.

¶12            On this record, we cannot say there are no probative facts to support the juvenile court's delinquency judgment or that its judgment is clearly contrary to the evidence.  The record shows that Kalib and Jackson were accomplices; contrary to Kalib's assertion, it does not matter that Jackson was the only person who testified that Kalib started the fire.  *See* A.R.S. § 13-302 ("In any prosecution, testimony of an accomplice need not be corroborated.").   And even assuming Jackson started the fire, Kalib participated, associated, and concurred with him in committing each offense.  The record also shows, based on Hyde's testimony and the 11 photographs, that the damage to the restroom was well over $2,000, and that Kalib did not contest the State's evidence regarding the amount of damage. *State v. Printz*, 125 Ariz. 300, 301-02, 304-05 (1980) (explaining that the jury could use "common sense" to determine the value of stolen property and upholding conviction for attempted possession of stolen property—a television—even though the only evidence was an officer's testimony about the price of similar television sets); *State v. Brockell*, 187 Ariz. 226, 227-29 (App. 1996) (declaring, in a criminal damage case, that the trier of fact uses the "rule of reasonableness to the particular fact situation presented" to determine the amount of damages, and that the defendant may dispute the State's method of calculation by presenting evidence of a more reasonable calculation).

¶13            Kalib also argues the court committed fundamental error by awarding any amount of restitution because the State failed to prove that Kalib caused the damage to the restroom and failed to prove the amount of restitution by a preponderance of the evidence.[3]  He requests that we vacate the restitution order.

¶14            The juvenile court did not conduct a restitution hearing; however, nothing in the record indicates that Kalib requested a hearing or raised any objection to the restitution award.  Thus, absent fundamental error, Kalib waived his arguments regarding restitution on appeal.  *See In re J.U.*, 241 Ariz. 156, 159, ¶ 8 (App. 2016).

¶15            When "a juvenile is adjudicated delinquent," the juvenile court is required to "order the juvenile to make full or partial restitution to the victim of the offense for which the juvenile was adjudicated delinquent."  A.R.S. § 8-344(A).  When doing so, "[t]he court may consider a verified statement from the victim . . . concerning damages for . . . loss of

---

[3]          Because we have concluded the evidence is sufficient to uphold the court's delinquency judgment, Kalib's argument that he did not cause damage to the restroom for the purpose of awarding restitution also fails.

property." *Id.* § 8-344(B). The court "has discretion to set the restitution amount according to the facts of the case in order to make the victim whole," but must ensure the "award consists of monies for economic losses that flow directly from or are the direct result of the crime committed." *In re Ryan A.*, 202 Ariz. 19, 24, ¶ 20 (App. 2002). A restitution order must be based on facts that are established by a preponderance of the evidence, *In re William L.*, 211 Ariz. 236, 238, ¶ 6 (App. 2005), and will be upheld "if it bears a reasonable relationship to the victim's loss," *Ryan A.*, 202 Ariz. at 24, ¶ 20.

**¶16**        Here, the juvenile court fundamentally erred in setting the restitution amount because the record lacks any supporting evidence for the court to determine the ordered amount of restitution. *See* A.R.S. § 8-344(C) ("The court shall determine the amount of restitution ordered pursuant to this subsection . . . ."); *J.U.*, 241 Ariz. at 159, ¶ 9 ("A restitution order that is not supported by statutory authority is fundamental, prejudicial error."); *State v. Thues*, 203 Ariz. 339, 340, ¶ 4 (App. 2002) ("Imposition of an illegal sentence constitutes fundamental error."). The only information in the record to support the ordered amount of restitution is the probation officer's disposition report, which states that a victims' rights coordinator emailed the Prescott Valley Town Clerk "regarding restitution in this case," and that the clerk "advised" that Prescott Valley was "requesting restitution for $7,088.48."[4] The report then explained that it did not include the victim's statement because the victims' rights coordinator "was unable to make contact with the victim" before the probation officer submitted the report. The photographs and Officer Hyde's testimony, although enough to support the conclusion that the amount of damages was *over* $2,000, *see supra* ¶ 12, are not enough to support a $7,088.48 restitution award, especially in the absence of a verified statement from the victim.

**¶17**        Without supporting evidence, no "reasonable relationship" exists between the victim's loss and the $7,088.48 award, and there is no way of knowing whether this amount consisted of monies that flowed only from the direct result of Kalib's adjudicated crimes. *See In re Alton D.*, 196 Ariz. 195, 197, ¶ 9 (2000) ("Before the court can impose an order of restitution, a victim must present evidence to establish that the victim's loss

---

4        In its answering brief, the State asserts that it provided the juvenile court with a "packet of documentation submitted by the Victim, including receipts, which outlines the costs of the repairs to the restrooms." But no such information appears in the record before us.

relates directly to the juvenile's offense and to provide a basis for setting an amount that is not speculative." (internal citation omitted)).

**¶18** Accordingly, we vacate the restitution award. *See State v. Stutler*, 243 Ariz. 128, 131, ¶ 8 (App. 2017) (finding sufficient evidence to uphold restitution award, despite no "documentary evidence" from the victim, because the victim's testimony and loss affidavit supported the amount of the restitution award); *In re Michelle G.*, 217 Ariz. 340, 343-44, ¶¶ 12-14, 16 (App. 2008) (vacating restitution award where prosecutor never requested restitution or submitted a victim's restitution affidavit until after the court issued a final disposition order). On remand, the juvenile court shall conduct the proceedings it deems necessary to receive evidence from the victim that provides adequate support for a restitution award. *See State v. Richards*, 166 Ariz. 576, 579 n.1 (App. 1990) (noting that the court can consider additional evidence in resentencing hearing); *see also State v. Fancher*, 169 Ariz. 266, 268 (App. 1991) ("The determination of the amount of restitution is part of the sentencing function of the court . . . .").

## CONCLUSION

**¶19** We affirm the juvenile court's delinquency order. We vacate, however, the $7,088.48 restitution award and remand for further proceedings consistent with this decision.

