NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE CHRISTOPHER L.

No. 1 CA-JV 18-0097
FILED 10-18-2018

---

Appeal from the Superior Court in Maricopa County
No. JV601380
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED AS MODIFIED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez and Logan Mussman
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Amanda M. Parker
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Chief Judge Samuel A. Thumma and Judge James B. Morse Jr. joined.

---

**B E E N E**, Judge:

¶1        This case involves two separate delinquent acts by juvenile Christopher L. ("Christopher"): one resulting in disputed property damage to individual victim R.C. and one resulting in stipulated property damage to corporate victim Watermasters.  Christopher appeals the amount of restitution he was ordered to pay to victim R.C.  For the following reasons, we affirm the restitution award but reduce the amount from $3,719.71 to $2,647.50.

**FACTS AND PROCEDURAL HISTORY**

¶2        R.C. lives in Minnesota and owned a home in Phoenix that was unoccupied and listed for sale.  On May 6, 2017, and again on May 7, 2017, police were called to R.C.'s home for burglaries committed by several unidentified individuals.  When police arrived, they saw R.C.'s home had been damaged; the damage included a broken arcadia door, a damaged front window, and holes in the living room walls.  On May 9, 2017, Christopher and two friends (Ricardo and Jesus) jumped the fence and entered R.C.'s home.  Ricardo told police that while inside, Christopher and Jesus kicked three holes into the living room walls.  Christopher admitted to entering R.C.'s house on May 9 but denied causing any damage.  A neighbor saw Christopher and his friends enter and then exit R.C.'s home through a back window.  The neighbor called the police and later identified Christopher and his friends, who were arrested.

¶3        The arresting officer recognized Christopher as a suspect in a different incident that took place the week before.  The incident involved extensive damage to equipment on the commercial construction site of Watermasters due to several suspects driving a tractor, knocking over a portable toilet, and crashing into a dump truck.

¶4 The State charged Christopher in a delinquency petition with criminal trespass (Count 1), a class 6 felony, for entering R.C.'s house on May 9, 2017, and criminal damage (Count 2), a class 4 felony, for damage to equipment at Watermasters' construction site. Pursuant to a plea agreement, Christopher pled delinquent to Count 2 as modified (class 6 undesignated felony), and the State dismissed Count 1. In pertinent part, the agreement provided that:

> **[THE] OFFENSE MAY BE DESIGNATED A MISDEMEANOR ONLY UPON SUCCESSFUL COMPLETION OF PROBATION. [CHRISTOPHER] AGREES TO PAY RESTITUTION TO ALL VICTIMS, FOR ALL ECONOMIC LOSS, ARISING OUT OF PHOENIX POLICE DEPARTMENTAL REPORT NUMBERS 201700000806281, 201700759854 and 201700779820. [CHRISTOPHER] AGREES TO PAY THE STIPULATED AMOUNT OF $63,472.21 to WATERMASTERS and THERE SHALL BE A RESTITUTION CAP IN AN AMOUNT NOT TO EXCEED $10,000.00 TO VICTIM [R.C.]. RESTITUTION SHALL BE JOINT AND SEVERAL WITH ALL OTHER CO-JUVENILES.**

The three police reports referenced in the plea agreement detailed the events and resulting damage of May 1 at Watermasters' construction site and May 9 at R.C.'s house.

¶5 Following a restitution hearing on R.C.'s damages, the superior court awarded R.C. $3,719.71 for the economic loss suffered as a result of Christopher's delinquent acts. The restitution awards to Watermasters ($63,472.21 pursuant to the plea agreement) and R.C. ($3,719.71 following the restitution hearing) were ordered as joint and several with Christopher and his co-juveniles.

¶6 Christopher timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

**¶7** Christopher argues that the superior court erred by awarding restitution to R.C. for economic losses not caused by his delinquent conduct on May 9 but caused by unknown intruders on May 6 and May 7. Focusing solely on May 9, Christopher contends "the evidence established only that [he] is liable for the cost to repair three holes in the walls." We agree that the court erred in the amount of restitution awarded, but we disagree that Christopher is only liable for the cost to repair the damaged walls.

**¶8** By the specific terms of the valid plea agreement (*i.e.*, the contract between Christopher and the State), which the juvenile court accepted, Christopher agreed to pay **"RESTITUTION TO ALL VICTIMS, FOR ALL ECONOMIC LOSS, ARISING OUT OF PHOENIX POLICE DEPARTMENTAL REPORT NUMBERS 201700000806281, 201700759854 and 201700779820."** These three police reports comprise the events and resulting damage of May 1 at Watermasters' site and May 9 at R.C.'s home. Christopher acknowledged that he read the agreement; reviewed its terms with his counsel; signed it; and initialed at each paragraph, including the bold and capitalized restitution terms above. The objective meaning of Christopher's plea agreement is clear—he agreed to pay restitution to R.C. for all economic losses resulting from the events of May 9—and he is bound by its terms. *See Mejia v. Irwin*, 195 Ariz. 270, 273, ¶ 17 (App. 1999) ("Once the State made the agreement with [the defendant] and the court accepted and acted upon it, all parties were bound by it.").

**¶9** For this reason, we reject Christopher's argument that he is not responsible for the costs relating to the broken window and window screen because they were damaged before May 9. Reports 201700000806281 and 201700759854 both document the broken window, therefore Christopher is responsible for that damage. *See Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588 (1977) ("[A] court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive."). R.C. demonstrated that replacing the window cost $961.20 and the broken screen cost $50.

**¶10** We also reject Christopher's argument that he should only be liable for twenty percent of the expenses related to repairing the walls in R.C.'s home because he only caused twenty percent of the damage. The record before us shows that R.C. paid $500 to repair drywall and texturing and $400 to repaint the walls; it does not suggest that only a portion of that cost was attributable to Christopher's actions on May 9 or reveal which percentage of the damage was due to Christopher's actions on May 9.

Absent evidence that Christopher caused only twenty percent of the damage, we will not reduce the amount presented by R.C.

**¶11**        Further, we affirm the superior court's award of $645.30 for R.C.'s travel expenses and $15 for the cost of photo development. R.C. demonstrated that these losses were of kind which "(1) is economic; (2) would not have occurred but for the criminal conduct; and (3) is directly caused by the criminal conduct." *See State v. Linares*, 241 Ariz. 416, 418, ¶ 7 (App. 2017). We find no abuse of discretion in including these amounts. *See In re Ryan A.*, 202 Ariz. 19, 24, ¶ 20 (App. 2002) (the court "has discretion to set the restitution amount according to the facts of the case in order to make the victim whole").

**¶12**        We do, however, agree with both parties that $300 awarded to R.C. for meals while in Arizona handling the house repairs was in error. R.C. would have spent money on food regardless of his geographical location. R.C. also sought an award of restitution for other economic losses he sustained for illegal acts on his property that occurred on some day in the first part of May 2017. As the State concedes, "[w]hile the record demonstrates that R.C. suffered these economic losses, the record does not establish that these economic losses occurred on May 9, 2017—the only day on which the State can prove that the Juvenile entered the house unlawfully." Accordingly, those amounts are not properly awarded as restitution against Christopher.[1] Thus, we affirm the superior court's order with regards to the amounts for the broken window, window screen, holes in the family room wall, R.C.'s travel expenses, and photo development. We vacate the remaining amounts because they were not covered in the plea agreement.

---

[1]      Although the juvenile court awarded restitution net of insurance proceeds received by R.C., and that award is reduced on appeal, the award, as reduced, remains net of insurance received by R.C. It is not disputed that R.C. suffered economic losses far exceeding the amount reduced on appeal (and certainly more than $2,000 greater than that reduced amount), meaning the insurance proceeds are not properly applied to losses that the record shows were caused by Christopher.

## CONCLUSION

¶13 For the foregoing reasons, we affirm the restitution award but reduce the amount from $3,719.71 to $2,647.50.[2]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[2] We include $76 in sales tax in our calculations.